**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-4144

_____

TOBIAS BERMUDEZ CHAVEZ, et al.,
v.
DOLE FOOD COMPANY, INC., et al.

(D. Del. No. 1-12-cv-00697)


JULIO ABREGO ABREGO, et al.,
v.
DOLE FOOD COMPANY, INC., et al.

(D. Del. No. 1-12-cv-00698)


ALVARADO ALFARO MIGUEL FRANCISCO, et al.,
v.
DOLE FOOD COMPANY, INC., et al.

(D. Del. No. 1-12-cv-00699)

JORGE LUIS AGUILAR MORA, et al.,
v.
DOLE FOOD COMPANY, INC., et al.

(D. Del. No. 1-12-cv-00700)


EDWIN AGUERO JIMENEZ, et al.,
v.
DOLE FOOD COMPANY, INC., et al.

(D. Del. No. 1-12-cv-00701)


GONZALEZ ARAYA FRANKLIN, et al.,
v.
DOLE FOOD COMPANY, INC., et al.

(D. Del. No. 1-12-cv-00702)


TOBIAS BERMUDEZ CHAVEZ, et al.,

Appellants

_____

On Appeal from the District Court
for the District of Delaware
(Civil Nos. 1-12-cv-00697, 1-12-cv-00698, 1-12-cv-00699,
1-12-cv-00700, 1-12-cv-00701, and 1-12-cv-00702)
District Judge:  Honorable Richard G. Andrews

_____

Argued on June 24, 2014 before Merits Panel
Court Ordered Rehearing En Banc on September 22, 2015
Argued En Banc on February 17, 2016

Before: McKEE, *Chief Judge*, AMBRO, FUENTES[*],
SMITH, FISHER, CHAGARES, GREENAWAY, JR.,
VANASKIE, SHWARTZ, KRAUSE, and
RESTREPO, *Circuit Judges*

(Opinion Filed: September 2, 2016)

Scott M. Hendler
Hendler Lyons Flores
1301 West 25th Street, Suite 400
Austin, TX 78705

Jonathan S. Massey          **[ARGUED]**
Massey & Gail LLP
1325 G Street, N.W., Suite 500
Washington, DC 20005

*Counsel for Appellants*

---

[*] The Honorable Julio M. Fuentes assumed Senior Status on July 18, 2016.

Caitlin J. Halligan
Andrea E. Neuman          **[ARGUED]**
Gibson, Dunn & Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY  10166

William E. Thomson, III
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
47th Floor
Los Angeles, CA  90071

Somers S. Price, Jr.
Potter, Anderson & Corroon LLP
1313 North Market Street, 6th Floor
Wilmington, DE  19801

> *Counsel for Appellees Dole Food Company, Inc., Dole Fresh Fruit, Standard Fruit Company, Standard Fruit and Steamship Company*

Michael L. Brem
Schirrmeister Diaz-Arrastia Brem, LLP
700 Milam Street, 10th Floor
Houston, TX  77002

Donald E. Reid
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, P.O. Box 1347
Wilmington, DE  19899

> *Counsel for Appellee Dow Chemical Co.*

Timothy J. Houseal
Jennifer M. Kinkus
Young Conaway Stargatt & Taylor LLP
1000 North King Street
Rodney Square
Wilmington, DE  19801

D. Ferguson McNiel, III
Vinson & Elkins LLP
1001 Fannin Street, Suite 2500
Houston, TX  77002

       *Counsel for Appellee Occidental Chemical Corp.*

John C. Phillips, Jr.
Phillips, Goldman, McLaughlin & Hall, P.A.
1200 North Broom Street
Wilmington, DE  19806

       *Counsel for Appellee AMVAC Chemical Corporation*

Kelly E. Farnan
Katharine L. Mowery
Richards, Layton & Finger, P.A.
920 North King Street
One Rodney Square
Wilmington, DE 19801

       *Counsel for Appellee Shell Oil Co.*

Steven L. Caponi            **[ARGUED]**
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE  19801

R. Jack Reynolds
Samuel E. Stubbs
Pillsbury, Winthrop, Shaw & Pittman LLP
909 Fannin Street, Suite 2000
Two Houston Center
Houston, TX  77010

   *Counsel for Appellees Chiquita Brands International, Inc., Chiquita Brands, L.L.C., Chiquita Fresh North America, L.L.C.*

Boaz S. Morag
Cleary, Gottlieb, Steen & Hamilton LLP
One Liberty Plaza
New York, NY  10006

James W. Semple
Cooch & Taylor
1000 West Street, 10th Floor
Wilmington, DE  19801

   *Counsel for Del Monte Fresh Produce N.A., Inc.*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*, with whom McKEE, *Chief Judge*, AMBRO, SMITH, FISHER, CHAGARES, GREENAWAY, JR., VANASKIE, SHWARTZ, KRAUSE, and RESTREPO, *Circuit Judges*, join.

The plaintiffs in these cases are foreign agricultural workers who labored on banana plantations in Central and South America from the 1960s through the 1980s. They allege that their employers and certain chemical companies knowingly exposed them to toxic pesticides over many years, and that this exposure caused adverse health consequences ranging from sterility, to birth defects, to a heightened risk of cancer. Litigation against the defendants first began in Texas state court in 1993, yet to date no court has reached the merits of the plaintiffs' claims.

A series of byzantine procedural developments eventually led the plaintiffs out of Texas and into Louisiana, where they filed several diversity-based suits in federal district court raising tort claims against the defendants under Louisiana law. The defendants moved to dismiss those claims on timeliness grounds, and the plaintiffs, fearing that the Louisiana District Court would grant those motions, filed nearly identical suits in the District of Delaware raising analogous tort claims under Delaware law. Because the timeliness rules of Louisiana and Delaware are different, the plaintiffs hoped that, even if the Louisiana District Court concluded that their claims were time-barred under Louisiana law, the Delaware District Court would reach the opposite conclusion under Delaware law. These developments eventually gave rise to three procedural questions we now confront in this appeal.

Our initial inquiry concerns proper application of "the first-filed rule." That rule is a comity-based doctrine stating that, when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority. In some cases, "first-filed" courts have relied on the rule to enjoin litigation in other jurisdictions. In other cases, "second-filed" courts have cited the rule to defer consideration of a matter until proceedings have concluded elsewhere. Application of the rule is discretionary.[1] If a second-filed court decides to invoke the rule, it also has the discretion to decide whether to stay, transfer, or dismiss the case before it. Here, the Delaware District Court chose to apply the first-filed rule and then, rather than staying or transferring the plaintiffs' claims, it dismissed those claims *with prejudice*.[2] That decision effectively terminated the plaintiffs' cases. On appeal, the plaintiffs contend that these dismissals were an abuse of discretion.

The second issue relates to personal jurisdiction. One of the defendants, Chiquita Brands International, moved for dismissal on the ground that the Delaware District Court lacked personal jurisdiction over it. The plaintiffs argued that personal jurisdiction was present, but, in the event that the

---

[1] *See E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 972 (3d Cir. 1988), *aff'd on other grounds*, 493 U.S. 182 (1990) ("[W]e review [a] district court's order [under the first-filed rule] for abuse of discretion.").

[2] "The label 'with prejudice' attached to the dismissal of a claim signifies that the dismissal is an adjudication of the merits and hence a bar to further litigation of the claim." *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980).

Delaware District Court disagreed, they asked it to transfer their claims against Chiquita Brands International to New Jersey, where that defendant is incorporated, rather than dismiss them outright. The Delaware District Court held that it lacked personal jurisdiction and refused to transfer the claims, believing that its decision to dismiss all other defendants under the first-filed rule merited a similar dismissal as to Chiquita Brands International. The plaintiffs contest that ruling on appeal.

Our third inquiry relates to the doctrine of res judicata. While the defendants' motions to dismiss under the first-filed rule were pending in Delaware, the Louisiana District Court dismissed the plaintiffs' claims on timeliness grounds. Certain defendants in the Delaware suits, reacting to this development, moved to dismiss the plaintiffs' Delaware claims on the ground that the Louisiana dismissals ought to bar re-litigation of related claims in another forum. The Delaware District Court declined to reach the issue in view of its application of the first-filed rule, but the issue nonetheless confronts our Court today given the present posture of these cases.

Our resolution of this appeal is therefore threefold. First, we conclude that the Delaware District Court abused its discretion under the first-filed rule by dismissing the plaintiffs' claims with prejudice. Second, we conclude that the Delaware District Court erred by refusing to transfer the plaintiffs' claims against Chiquita Brands International to another forum. And third, we conclude that the timeliness dismissals entered by the Louisiana District Court do not create a res judicata bar to the plaintiffs' Delaware suits. As these cases come to us today, there is a serious possibility that

no court will ever reach the merits of the plaintiffs' claims. More than twenty years after this litigation began, we think that outcome is untenable—both as a matter of basic fairness and pursuant to the legal principles that govern this procedurally complex appeal.[3]

Accordingly, we will vacate the Delaware District Court's dismissals and remand these cases for further proceedings.

## I.    Background

These cases arise from the use of the pesticide dibromochloropropane (DBCP) on banana farms in several countries, including Panama, Ecuador, and Costa Rica. The plaintiffs allege that they were exposed to DBCP beginning in the 1960s and ending sometime in the 1980s, and that their exposure to DBCP has caused them to suffer from a number of serious health problems. The plaintiffs have been seeking redress for those injuries in various courts around the country and, indeed, around the world for over twenty years.

---

[3] By emphasizing the procedural complexity of this case, we do not mean to suggest that the defendants have acted improperly or unethically by seeking to defeat the plaintiffs' claims solely on procedural grounds. Within reasonable boundaries, the defendants are free to pursue their interests in the courtroom in whatever manner they deem appropriate.

The full history of these cases has been well chronicled elsewhere, and we will not duplicate those efforts here.[4] Still, because the complexity of this litigation's procedural history bears on our substantive analysis, we provide a brief summary of that history below.

## A. Procedural History in the Texas Courts

This litigation began in 1993 with the filing of a class action in Texas state court.[5] The defendants quickly adopted a three-step strategy for defeating the plaintiffs' claims. First, they impleaded various foreign entities under the Foreign Sovereign Immunities Act.[6] This, in turn, provided a hook for federal jurisdiction.[7] Second, the defendants removed the case to the United States District Court for the Southern District of Texas. Third, the defendants asked the Texas

---

[4] *See, e.g., Blanco v. AMVAC Chem. Corp.*, No. N11C-07-149 (JOH), 2012 WL 3194412, at \*1–5 (Del. Super. Ct. Aug. 8, 2012) (providing a very thorough recital of this litigation's many twists and turns).

[5] In reality, multiple groups of plaintiffs filed competing lawsuits, leading to months of inter-court wrangling and eventual consolidation in the Texas courts. We elide these and similar details for the sake of brevity.

[6] *See* 28 U.S.C. §§ 1330, 1603.

[7] The United States Supreme Court later rejected the defendants' view of what kinds of foreign companies the Foreign Sovereign Immunities Act permits a defendant to implead. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 476–77 (2003).

District Court to dismiss the plaintiffs' class action on the ground of *forum non conveniens*.[8]

This strategy was successful, at least for a time. In 1995, the Texas District Court granted the defendants' request for a *forum non conveniens* dismissal, thereby sending the plaintiffs back to their home countries to try to litigate their claims there.[9] It also denied all other pending motions as moot, including the plaintiffs' pending motion for class certification.[10] Even so, the Texas District Court stated

---

[8] The doctrine of *forum non conveniens* embodies the principle that, "[a]lthough a plaintiff's choice of forum should rarely be disturbed, '[w]hen an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case.'" *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013) (all alterations in original except first) (second set of internal quotation marks omitted) (quoting *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008)).

[9] *See Delgado v. Shell Oil Co.*, 890 F. Supp. 1324, 1373 (S.D. Tex. 1995).

[10] *See id.* at 1375.

that the plaintiffs could return to federal court if their home countries refused to take jurisdiction over their claims.[11]

By the early-2000s, it had become clear that foreign courts were, as the Texas District Court anticipated, unwilling to hear these cases. As a result, the plaintiffs returned to Texas and asked for permission to litigate their claims in the United States. The Texas District Court, acting under the return jurisdiction clause it included in its 1995 dismissal order, revived the case and sent it back to Texas state court.[12]

_____

[11] *See id.* ("[I]n the event that the highest court of any foreign country finally affirms the dismissal for lack of jurisdiction of any action commenced by a plaintiff in these actions in his home country or the country in which he was injured, that plaintiff may return to this court and, upon proper motion, the court will resume jurisdiction over the action as if the case had never been dismissed . . . .").

[12] *See Delgado v. Shell Oil Co.*, 322 F. Supp. 2d 798, 816−17 (S.D. Tex. 2004). In fact, the procedural questions that arose upon the plaintiffs' return to the United States were more complicated still. Because of the intervening effect of the Supreme Court's *Patrickson* decision, *supra* note 7, the Texas District Court concluded that it lacked *subject matter jurisdiction* to decide any motion to reinstate the plaintiffs' cases in federal court. *Id.* at 813−15. It therefore remanded those cases (which had previously been consolidated) to the Texas state courts with instructions for *those* courts to decide the reinstatement question. *Id.* at 816−17. Note that this entire morass was created by the defendants' twin decisions to invoke the Foreign Sovereign Immunities Act and seek a *forum non conveniens* dismissal in the first instance.

13

The defendants challenged the reinstatement but were unsuccessful.[13] In 2009, they again removed the case to federal court, this time claiming that Congress's passage of the Class Action Fairness Act in 2005 conferred federal jurisdiction over the plaintiffs' state-law claims, even though the plaintiffs sued the defendants well over a decade before the Act came into effect. The Texas District Court rejected this argument and—again—remanded the case to state court.[14]

There, the defendants obtained a denial of class certification in 2010.[15] That decision brought the Texas-based chapter of this saga to a close.

### B. Subsequent Litigation in Louisiana and Delaware

After the denial of class certification in Texas, the plaintiffs in these cases decided to strike out on their own and sue the defendants on a non-class basis. They determined

---

[13] *See In re Standard Fruit Co.*, No. 14-05-00697-CV, 2005 WL 2230246 (Tex. App. 14th Dist. Sept. 13, 2005) (denying defendants' petitions for a writ of mandamus challenging the reinstatement).

[14] *See* App. Vol. II at 208–13 (a copy of the slip opinion in *Carcamo v. Shell Oil Co.*, No. 09-cv-258 (KMH) (S.D. Tex. Dec. 18, 2009), remanding the case to state court).

[15] *See id.* at 214 (a copy of the order in *Carcamo v. Shell Oil Co.*, No. 93-C-2290 (Tex. Dist. Ct. Brazoria Cty. June 3, 2010), denying the plaintiffs' motion for class certification).

that it made sense to sue in either Louisiana or Delaware,[16] but, given the long pedigree of this litigation, there were potential timeliness problems in both jurisdictions.

Those problems were twofold. First, there was the issue of cross-jurisdictional class action tolling.[17] The plaintiffs' claims flow from state-law causes of action with relatively short limitations periods. The plaintiffs maintain that this is not a barrier to suit because the pendency of their class action in Texas should have tolled any applicable limitations period between 1993, when the putative class action was filed, and 2010, when the Texas state court denied class certification. At the time the plaintiffs were deciding whether to sue in Louisiana or Delaware, however, it was unclear whether the courts in those states would agree.[18]

---

[16] *See* Pls.' Br. at 11–12 (explaining that "Standard Fruit was based in Louisiana and United Fruit (now Chiquita) maintained corporate operations there," while "Delaware is the chosen State of incorporation of numerous of the defendants, including Dow, Shell, Chiquita and Dole").

[17] In many instances, courts have concluded that the filing of a class action complaint stops the statute of limitations clock (that is, "tolls" it) with respect to unnamed members of the class. By using the phrase "cross-jurisdictional class action tolling," we mean to describe the question of "whether a state court would engage in [such] tolling during the pendency of a class action in another court." *Wade v. Danek Med., Inc.*, 182 F.3d 281, 287 (4th Cir. 1999).

[18] In the federal system, "the Supreme Court [has] held that where class certification has been denied because of the

15

Second, even if Louisiana or Delaware were to recognize cross-jurisdictional class action tolling, the plaintiffs' claims might *still* be untimely. Recall that the plaintiffs' class action was filed in Texas state court, removed to the Texas District Court, dismissed on the ground of *forum non conveniens*, and then reinstated several years later. If a court were to conclude that the plaintiffs' class action was not "pending" during the period of the *forum non conveniens* dismissal, the plaintiffs' claims would likely be untimely even if cross-jurisdictional class action tolling applied.[19]

---

failure to demonstrate that the class was sufficiently numerous, 'the commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status.'" *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 299 (3d Cir. 2010), *as amended* (Oct. 20, 2010) (second alteration in original) (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974)).

The Supreme Court "later extended its holding in *American Pipe* to 'all asserted members of the class, not just as to interveners.'" *Id.* (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983)). States, however, are free to recognize cross-jurisdictional class action tolling or to reject it.

[19] Indeed, this issue has arisen with respect to the Delaware statute of limitations in a related case. *See infra* at pages 65–68.

16

Deciding where to file suit therefore required the plaintiffs to predict how courts in Delaware and Louisiana would, in the absence of clear precedent, untangle the procedural Gordian Knot that this litigation had become. The plaintiffs eventually decided to sue in federal district court in Louisiana. The defendants then moved for summary judgment on the ground that the plaintiffs' claims were time-barred under Louisiana's one-year statute of limitations.[20]

Fearing that an adverse timeliness ruling might be forthcoming from the Louisiana District Court, the plaintiffs decided to take action in order to preserve their ability to litigate in another forum where their claims might be timely.[21] To that end, they filed several suits in the Delaware District Court that raised analogous state-law causes of action against the same defendants as in Louisiana. The plaintiffs alerted the Louisiana District Court to their actions in Delaware,[22] and indeed told the Louisiana District Court that if it were to hold that their claims were timely, they would continue to

---

[20] *See* La. Civ. Code Ann. art. 3492.

[21] As the plaintiffs tell it, they first began to doubt their decision to sue in Louisiana when, about ten months after litigation began there, the Louisiana Supreme Court granted writs to review two cases directly raising the issue of cross-jurisdictional class action tolling. *See* Pls.' Br. at 13–14.

[22] *See* App. Vol. II at 216–17 (Ltr. from Pls.' Counsel to Judge Barbier (June 4, 2012)).

litigate in Louisiana rather than pursue their claims elsewhere.[23]

The defendants believed that this strategy—filing duplicative lawsuits in Delaware as an insurance policy against an adverse timeliness ruling in Louisiana—was improper. Accordingly, Dole filed a motion to dismiss the Delaware cases under the first-filed rule.[24] The Delaware District Court concluded that the first-filed rule applied, meaning that it then faced a discretionary decision whether to stay, transfer, or dismiss the proceedings.[25] It chose to dismiss the plaintiffs' claims against Dole *with prejudice*, reasoning that the plaintiffs had already sued in Louisiana and "one fair bite at the apple [was] sufficient."[26] The Delaware

---

[23] *Id.* at 216 ("If the La. Supreme Court rules that the Plaintiffs [sic] cases are not Prescribed, the Plaintiffs would elect to proceed in Louisiana . . . ."). Louisiana law refers to statutes of limitations as "prescriptive periods," and an action is "prescribed" when the limitations clock has expired. *See, e.g.*, *Bouterie v. Crane*, 616 So. 2d 657, 660 (La. 1993) (explaining that "a prescriptive period is a time limitation on the exercise of a right of action").

[24] *See id.* at 45, ECF No. 3. The motion was filed by Dole Food Co., Dole Fresh Fruit Co., Standard Fruit Co., and Standard Fruit and Steamship Co.

[25] *Chavez v. Dole Food Co.*, No. 12-cv-697 (RGA), 2012 WL 3600307, at *1–2 (D. Del. Aug. 21, 2012).

[26] *Id.* at *2. *See also Chavez v. Dole Food Co.*, 947 F. Supp. 2d 438, 440–41 (D. Del. 2013) (denying plaintiffs' motion for a stay and for reconsideration).

District Court eventually applied this reasoning to dismiss the plaintiffs' claims against most of the other defendants as well.[27]

One additional defendant, Chiquita Brands International, moved for dismissal on the ground that the Delaware District Court lacked personal jurisdiction over it. The plaintiffs contested that motion, but, in the event that the Delaware District Court concluded that personal jurisdiction was lacking, they asked it to transfer their claims against Chiquita Brands International to New Jersey, where that defendant is incorporated, instead of dismissing their claims outright. The Delaware District Court, having already concluded that the plaintiffs' duplicative lawsuits merited dismissal under the first-filed rule, refused that request and granted the motion to dismiss.[28]

In the meantime, things started to go badly for the plaintiffs in Louisiana. First, the Louisiana District Court

---

[27] The day after the Delaware District Court dismissed the Dole defendants, Occidental Chemical Co. moved for dismissal based on the first-filed rule. (App. Vol. II at 48, ECF No. 24.) Other defendants, including Del Monte Fresh Produce N.A., Inc., Dow Chemical Co., and Shell Oil Co. later joined the motion, which the Delaware District Court granted on March 29, 2013. (App. Vol. I at 8–9.) Although final judgment had been entered in the Louisiana District Court, the Delaware District Court reasoned that the first-filed rule still applied because the propriety of the Louisiana dismissals had been appealed to the Fifth Circuit.

[28] *Chavez*, 947 F. Supp. 2d at 444.

dismissed the plaintiffs' claims as time-barred. It reasoned that, even if the Louisiana Supreme Court were to recognize cross-jurisdictional class action tolling (which, to date, it had not done), the Texas District Court's *forum non conveniens* dismissal in 1995 ended any tolling period and restarted the clock under Louisiana's statute of limitations.[29] Shortly after the Louisiana District Court issued its ruling, the Louisiana Supreme Court held in an unrelated case, *Quinn v. Louisiana Citizens Property Insurance Corp.*,[30] that Louisiana does not recognize cross-jurisdictional class action tolling at all.[31] That holding, of course, had the effect of rendering the plaintiffs' claims untimely in Louisiana regardless of how one views the effect of the 1995 *forum non conveniens*

---

[29] *See Chaverri v. Dole Food Co.*, 896 F. Supp. 2d 556, 569 (E.D. La. 2012) ("Per Louisiana law, the entrance of the final judgment [on *forum non conveniens* grounds] absolutely stopped the pendency of the case and restarted prescription."). The Louisiana District Court also ruled that, independent of the dismissal order, the Texas District Court's "denial of the motion for class certification as moot" *also* restarted Louisiana's statute of limitations clock. *Id.* at 568–69.

[30] 118 So. 3d 1011 (La. 2012).

[31] *Id.* at 1022 ("[O]ur analysis . . . leads us to conclude that the [Louisiana] legislature has rejected 'cross-jurisdictional tolling' in class action proceedings.").

dismissal.[32]   The Fifth Circuit recognized this and affirmed the Louisiana District Court's dismissal orders on that basis.[33]

Quite apart from the first-filed rule, the Louisiana District Court's timeliness dismissals also raised potential res judicata issues vis-à-vis the Delaware litigation.  Two of the defendants—Chiquita Brands, L.L.C. and Chiquita Fresh North America, L.L.C.—recognized this and moved for dismissal *both* under the first-filed rule *and* on res judicata grounds.[34]  In view of its prior holdings, the Delaware District Court dismissed the cases against these two defendants under the first-filed rule and dismissed their res judicata motions as

---

[32] The Delaware Supreme Court, by contrast, has since reached the opposite conclusion, holding in a related case that Delaware does, in fact, recognize cross-jurisdictional class action tolling.  *See Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 399 (Del. 2013).

[33] *See Chaverri v. Dole Food Co.*, 546 F. App'x 409, 414 (5th Cir. 2013) ("*Quinn* makes it clear that class actions filed in other states no longer interrupt prescription and gives no support to an argument that such suits ever would have done so.").

[34] App. Vol. II at 50, ECF No. 41.   Chiquita Brands International, Inc. joined in these motions, but only in the event that the Delaware District Court denied its motion to dismiss for lack of personal jurisdiction.

moot.[35]   These orders terminated the last of the plaintiffs' claims.

All of this procedural history brings us, at last, to the fundamental issue in this case:  whether the Delaware District Court's prejudice-based dismissals were a proper exercise of its discretion under the first-filed rule.  Once the Fifth Circuit affirmed the Louisiana District Court's timeliness rulings, the dismissals in Delaware threatened to prevent the plaintiffs from ever being able to litigate the merits of their claims in any court.  Believing that this result was not a permissible outcome under the first-filed rule, the plaintiffs appealed.[36]  A divided panel of our Court affirmed the Delaware District Court's dismissals, the plaintiffs filed a petition for rehearing *en banc*, and we granted that petition in September of 2015.[37]

We now turn to the proper application of the first-filed rule in the present case.

---

[35] *Chavez v. Dole Food Co., Inc.*, No. 12-cv-697 (RGA), 2013 WL 5288165, at *2 (D. Del. Sept. 19, 2013).

[36] The Delaware District Court exercised jurisdiction under 28 U.S.C. § 1332(a). We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

[37] *See Chavez v. Dole Food Co.*, 796 F.3d 261 (3d Cir. 2015), *reh'g en banc granted*, *opinion vacated* (Sept. 22, 2015).  Judge Fuentes dissented from the original panel decision. *See id.* at 271–81.

## II.    The Delaware District Court Abused Its Discretion under the First-Filed Rule

We initially adopted the first-filed rule in *Crosley Corp. v. Hazeltine Corp*.[38] That case, like all first-filed cases, involved two duplicative actions. In the first, Crosley sued Hazeltine in federal district court in Delaware to contest the validity of several of Hazeltine's patents. In the second, Hazeltine sued Crosley in federal district court in Ohio, alleging that Crosley had infringed several of the same patents at issue in Delaware. Crosley asked the Delaware District Court to enjoin the Ohio suits, but it refused. We reversed with instructions to enter a temporary injunction.[39] In doing so, we stated that "[t]he party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter."[40]

In *E.E.O.C. v. University of Pennsylvania*,[41] we elaborated on *Crosley* and discussed various scenarios where, for equitable reasons, the presumption against duplicative litigation might not apply. That case arose from an E.E.O.C. investigation into the University of Pennsylvania's decision to deny tenure to a professor, allegedly based on the professor's race and sex. The E.E.O.C. subpoenaed the

---

[38] 122 F.2d 925, 929–30 (3d Cir. 1941).

[39] *Id.* at 930.

[40] *Id.*

[41] 850 F.2d 969 (3d Cir. 1988).

professor's tenure file, and the University resisted turning over the relevant documents. Knowing that a subpoena enforcement suit was imminent, the University preemptively sued the E.E.O.C. in federal district court in the District of Columbia. That suit, a declaratory judgment action, sought to challenge the E.E.O.C.'s policies governing how it investigated denials of tenure. The E.E.O.C. nonetheless filed its subpoena enforcement action in the Eastern District of Pennsylvania, raising the question of whether the first-filed rule barred the Pennsylvania suit.[42]

We concluded that it did not. We reiterated that the first-filed rule is "grounded on equitable principles"[43] and requires district court judges to "fashion[] a flexible response to the issue of concurrent jurisdiction."[44] In our view, the district court was correct to focus on the fact that "[t]he timing of the University's filing in the District of Columbia indicate[d] an attempt to preempt an imminent subpoena enforcement [action]."[45] We concluded that, "[b]ecause the first-filed rule is based on principles of comity and equity, it should not apply when at least one of the filing party's motives is to circumvent local law."[46]

---

[42] *See id.* at 972–73.

[43] *Id.* at 977.

[44] *Id.* (quoting *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979)).

[45] *Id.*

[46] *Id.* at 978.

24

Both *Crosley* and *E.E.O.C.* addressed the issue of when a federal district court, confronted with a second-filed action, should permit that action to continue. This appeal raises a different question. When a district court decides to apply the first-filed rule, it then faces the discretionary choice whether to stay the second-filed action, transfer it, dismiss it *without* prejudice, or dismiss it *with* prejudice, thereby permanently terminating the case. The Delaware District Court chose the last option. The issue we confront now is whether that decision was an abuse of the Delaware District Court's discretion—a question of first impression in our Circuit.

We begin by looking to the relevant treatises. Speaking of the first-filed rule as a doctrine of abstention, Wright and Miller say that "it is well settled that if the same issues are presented in an action pending in another federal court, one of these courts may stay the action before it or even in some circumstances enjoin going forward in the other federal court."[47] Wright and Miller also discuss the possibility of transferring a second-filed case to another

---

[47] 17A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Vikram David Amar, Federal Practice and Procedure: Jurisdiction § 4247, at 433–38 (3d ed. 2007).

forum.[48]  At no point do they suggest that a court ought to dismiss a second-filed action, much less do so with prejudice.

Moore's Federal Practice, meanwhile, states that "[i]f the first-filed action is vulnerable to dismissal on jurisdictional or statute of limitations grounds, the court in the second-filed action should stay it or transfer it, rather than outright dismiss it."[49]  This guidance reflects the commonsense proposition that, in a case raising timeliness concerns, a court's decision to dismiss a second-filed suit could, if the limitations clock were to expire in the first forum, have the effect of putting the plaintiffs entirely out of court.  Indeed, that is precisely what is threatened in this very case.

Several of our sister circuits have also considered the appropriateness of dismissing a case under the first-filed rule.  The Seventh, Ninth, and Fifth Circuits have all stated that district courts should be careful to apply their discretion under the rule so as not to cause undue prejudice to the litigants appearing before them.  These courts have therefore

---

[48] 15 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, Federal Practice and Procedure: Jurisdiction § 3854 & n.12, at 339–43 (4th ed. 2013) (collecting cases).  While some of the cases collected by Wright and Miller involve dismissals under the first-filed rule, at no point do Wright and Miller suggest that such dismissals are advisable or even appropriate.

[49] 17 Moore's Federal Practice ¶ 111.13[1][o][ii][A] (3d ed. updated through 2016).

indicated that, in most circumstances, a stay or transfer of a second-filed action will be more appropriate than a dismissal.

We begin with the Seventh Circuit's decision in *Asset Allocation and Management Co. v. Western Employers Insurance Co.*[50] The plaintiff there sued the defendant in federal district court in Illinois, only to have the defendant then sue the plaintiff in federal district court in California. At the plaintiff's request, the Illinois District Court not only enjoined any duplicative litigation in California, but ordered the defendant to dismiss its California case entirely.[51]

While the Seventh Circuit affirmed the portion of the district court's order enjoining the parties from proceeding in California, it reversed the dismissal order. It explained that if the Illinois District Court were to dismiss the plaintiff's claims before litigation was "well advanced," the parties were free to litigate their claims in California.[52] The court also warned that statute of limitations problems could arise if the defendant in Illinois were forced to dismiss its California claims. It summarized its view this way: "[W]hy take chances? It is simpler just to stay the second suit."[53]

The Seventh Circuit again considered the first-filed rule in *Central States, Southeast and Southwest Areas*

---

[50] 892 F.2d 566 (7th Cir. 1989).

[51] *Id.* at 568.

[52] *Id.* at 571.

[53] *Id.*

*Pension Fund v. Paramount Liquor Co.*[54]  That case arose from a contested arbitration, at the conclusion of which one party filed suit to enforce the arbitration award in Missouri and another party filed suit to annul the award in Illinois. Because the Missouri suit was filed first, the district court in Illinois dismissed the case before it—without prejudice—under the first-filed rule.[55]  The Seventh Circuit concluded that the district court erred by doing so, stating that the dismissal "created an unwarranted risk of legal prejudice."[56] The better rule, the court explained, is that "[w]hen comity among tribunals justifies giving priority to a particular suit, the other action (or actions) should be stayed, rather than dismissed, unless it is absolutely clear that dismissal cannot adversely affect any litigant's interests."[57]

The Ninth Circuit adopted a similar approach in *Alltrade, Inc. v. Uniweld Products, Inc.*[58]  That case arose from Uniweld's attempt to seek cancellation of several of

---

[54] 203 F.3d 442 (7th Cir. 2000).

[55] *See Cent. States, Se. & Sw. Areas Pension Fund v. Paramount Liquor Co.*, 34 F. Supp. 2d 1092, 1095–96 (N.D. Ill. 1999) (dismissing the action without prejudice).

[56] *Paramount Liquor Co.*, 203 F.3d at 445.

[57] *Id.* at 444; *see also Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002) (stating that that "[e]ven when prudence calls for putting a redundant suit on hold, it must be stayed rather than dismissed unless there is no possibility of prejudice to the plaintiff").

[58] 946 F.2d 622 (9th Cir. 1991).

Alltrade's federal trademark registrations before the Trademark Trial and Appeal Board. Neither side was satisfied with the outcome of that proceeding, leading Uniweld to file suit in Florida and Alltrade to file suit in California. The California court, applying the first-filed rule, dismissed the case before it. On appeal, the Ninth Circuit vacated that decision. Looking to the Seventh Circuit's decision in *Asset Allocation* for guidance, it expressed the concern that if the Florida court were to terminate Uniweld's first-filed case without reaching the merits, Alltrade "would have to file a new suit in California and would risk encountering statute of limitations problems."[59] A stay, on the other hand, would avoid any prejudice to the parties. If the litigation were to proceed in Florida, "the stay [in California] could be lifted and the second-filed action dismissed or transferred."[60]

Finally, the Fifth Circuit considered the proper application of the first-filed rule in *Burger v. American Marine Officers Union*.[61] The plaintiff there sued the same defendants twice, first in Florida and then again in Louisiana. The Louisiana District Court dismissed the case—with prejudice—under the first-filed rule.[62] The Fifth Circuit

---

[59] *Id*. at 629.

[60] *Id*. (quoting *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 n.1 (5th Cir. 1985)).

[61] No. 97-31099, 1999 WL 46962 (5th Cir. Jan. 27, 1999) (unpublished per curiam opinion).

[62] *See Burger v. Am. Mar. Officers Union*, No. 97-cv-2085 (GTP), 1997 WL 599301, at *2 (E.D. La. Sept. 26, 1997).

vacated that decision. It noted that, after the Louisiana court had dismissed the case, the Florida court dismissed several of the defendants for lack of personal jurisdiction. The Louisiana court's prejudice-based dismissal thereby created a situation in which the plaintiff was barred from litigating the merits of his claims in another forum where personal jurisdiction might be present. The Fifth Circuit explained that "[w]hen the jurisdiction of the first-filed court to hear the dispute is uncertain, it is an abuse of discretion to dismiss the claims in the second-filed court with prejudice, as it creates the risk that the merits of the claims could never be addressed."[63] Instead, the Louisiana court "should have either granted a stay or dismissed the claims . . . without prejudice."[64]

The through-line connecting these cases is the proposition that a court exercising its discretion under the first-filed rule should be careful not to cause unanticipated prejudice to the litigants before it. We agree with that proposition and today incorporate it into the jurisprudence of our Circuit.

In addition to reflecting the wisdom of our sister circuits, this conclusion is consistent with, and perhaps even a necessary consequence of, our obligations under Article III. The "mandate . . . [to] hear cases within [our] statutory jurisdiction is a bedrock principle of our judiciary."[65] In

---

[63] *Burger*, 1999 WL 46962, at *2.

[64] *Id*. at *3.

[65] *In re One2One Commc'ns, LLC*, 805 F.3d 428, 439 (3d Cir. 2015) (Krause, J., concurring).

30

*Quackenbush v. Allstate Insurance Co.*,[66] the Supreme Court considered how this mandate intersects with various abstention doctrines. It began by reiterating that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."[67] It is true, the Court explained, that "a federal court has the authority to decline to exercise its jurisdiction when it 'is asked to employ its historic powers as a court of equity.'"[68] Even so, the Court went on to underscore the fact that, in suits for damages "at law," its precedents generally only "permit a federal court to enter a stay order that postpones adjudication of the dispute, not to dismiss the federal suit altogether."[69]

*Quackenbush* thus drew a distinction between two of the Supreme Court's abstention precedents, *Louisiana Power & Light Co. v. City of Thibodaux*[70] and *County of Allegheny v. Frank Mashuda Co.*[71] In *Thibodaux*, the plaintiff's claims arose under a Louisiana statute that, up to that point, had not yet been interpreted by the Louisiana courts. The district court stayed the federal proceedings "until the Supreme Court of Louisiana ha[d] been afforded an opportunity to interpret

---

[66] 517 U.S. 706 (1996).

[67] *Id.* at 716.

[68] *Id.* at 717 (quoting *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 120 (1981) (Brennan, J., concurring)).

[69] *Id.* at 719 (emphasis omitted).

[70] 360 U.S. 25 (1959).

[71] 360 U.S. 185 (1959).

31

[the law].'"[72] The *Thibodaux* Court concluded that this decision was appropriate in view of the federal interest in "avoiding the hazards of serious disruption by federal courts of state government or needless friction between state and federal authorities."[73] In *County of Allegheny*, by contrast, the district court in Pennsylvania "had not merely stayed adjudication of the federal action pending the resolution of an issue in state court, but rather had dismissed the federal action altogether."[74] Our Court vacated the dismissal on appeal, and the Supreme Court affirmed.[75] *Quackenbush* explained that the divergent outcomes in these cases flowed from the distinction between dismissing an action and merely staying it.[76] As *Quackenbush* put it, "[u]nlike the outright dismissal or remand of a federal suit . . . an order merely staying the action 'does not constitute abnegation of judicial duty.'"[77]

For present purposes, the teaching of *Quackenbush* is that "where there is no other forum" with the power to hear a case, "relinquishing jurisdiction is not abstention; it's abdication."[78] In other words, judge-made canons of comity

---

[72] *Thibodaux*, 360 U.S. at 26.

[73] *Id.* at 28.

[74] *Quackenbush*, 517 U.S. at 721.

[75] *Cty. of Allegheny*, 360 U.S. at 198.

[76] *Quackenbush*, 517 U.S. at 721.

[77] *Id*. (quoting *Thibodaux*, 360 U.S. at 29).

[78] *One2One Commc'ns, LLC*, 805 F.3d at 440 (Krause, J., concurring).

32

and equity cannot supplant a district court's duty to decide cases within its jurisdiction. Consistent with this principle, a district court should generally avoid terminating a claim under the first-filed rule that has not been, and may not be, heard by another court.

Our own abstention jurisprudence has long directed district courts to stay, rather than dismiss, potentially duplicative federal suits.[79] As we explained in *Feige v. Sechrest*,[80] a stay "retains the sensitivity for concerns of federalism and comity implicated by . . . abstention, while preserving appellants' right to litigate their claims in the federal forum should the [state] courts, for jurisdictional or other reasons, fail to adjudicate them."[81] In this way, a stay order does not "abdicate [a district court's] judicial duty to exercise its jurisdiction," but rather "postpone[s] the exercise of that jurisdiction until [related] proceedings . . . reach their conclusion."[82]

---

[79] *See, e.g.*, *Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 138 (3d Cir. 1988) ("In the unusual circumstances of this case, where federal policy counsels deferral to a state proceeding which is not strictly parallel, some matters arguably will remain for resolution after the state proceedings are concluded. Therefore, we think the better practice here is to stay the federal action rather than dismissing it.").

[80] 90 F.3d 846 (3d Cir. 1996).

[81] *Id.* at 851.

[82] *Id.*

The benefits of staying a second-filed suit are just as persuasive in the context of the first-filed rule. Because a stay confines litigants to the first forum until proceedings there have concluded, a stay will generally avoid wasted judicial efforts, conflicting judgments, and unnecessary friction between courts. In addition, a second-filed court will rarely need to reach the merits of the stayed case. The far more likely result is that the matter will reach a final resolution in the first court. In the few instances where there is no res judicata (or other) bar that would prevent litigation in the second forum, it will generally be because the second suit is not truly duplicative of the first. In *those* circumstances, a second-filed court has an obligation, consistent with *Quackenbush*, to take jurisdiction over the plaintiffs' claims.

We therefore conclude that, in the vast majority of cases, a court exercising its discretion under the first-filed rule should stay or transfer a second-filed suit. Even a dismissal *without prejudice* may create unanticipated problems. A dismissal *with prejudice* will almost always be an abuse of discretion.

Note that we say "almost always," not "always." The factual circumstances giving rise to duplicative litigation are too variable to adopt a blanket, hard-and-fast rule, and there may well be circumstances in which a district court is correct to respond to a second-filed suit with a prejudice-based dismissal. For example, "if the second suit is harassing, vexatious, [or] an abuse of process, the proper disposition . . . is dismissal with prejudice, so that the plaintiff

34

cannot refile the suit."[83]  Similarly, if the duplicative litigation results from the plaintiff's own failure to follow the rules, such as by repeatedly failing to timely serve process, a prejudice-based dismissal may be appropriate.[84]  Blatant forum shopping or gamesmanship by one or both parties may also merit such a result.[85]

This, of course, brings us to the issue at the heart of the present litigation.  The defendants insist that what happened here *was* forum shopping.  In their view, the plaintiffs had an obligation to research the timeliness rules in both Louisiana and Delaware and then, having done so, take their "best shot" at finding a forum willing to hear the merits of their claims.  If the plaintiffs chose poorly, and their claims were dismissed as time-barred, that result might be unfortunate—but, the defendants insist, such a possibility does not require federal courts to entertain duplicative lawsuits.

---

[83] *Asset Allocation*, 892 F.2d at 571 (punctuation modified).

[84] *See, e.g.*, *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 224 (7th Cir. 1993) (stating that dismissing a second-filed suit with prejudice may be appropriate when such a dismissal is "entirely a consequence of the plaintiff's own failure to follow the rules").

[85] Alternatively, some courts have reacted to gamesmanship by refusing to apply the first-filed rule at all.  *See, e.g.*, *CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 409 (D. Minn. 2009) ("Given the likely forum-shopping by both CBS Interactive and Defendants, the Court declines to rigidly apply the first-filed rule . . . .").

To be sure, there is some merit to the defendants' assertions. A plaintiff who sues in two jurisdictions simultaneously may be *required* to litigate in the first forum once the court there has expended substantial judicial resources.[86] A plaintiff's negligence in researching the applicable timeliness rules may also have adverse consequences. If it is crystal clear that, under the limitations period in one forum, a plaintiff's claims will be untimely, and it is crystal clear that, under the limitations period in a second forum, a plaintiff's claims will be timely, it may well be the case that a plaintiff who erroneously sues in the first forum will have to live with the consequences of the inevitable dismissal. But that outcome, should it come to pass, will be a function of the first forum's substantive law of res judicata and claim preclusion. Whether and to what extent those principles apply is a *separate question* from the proper application of the first-filed rule. To put it another way, the first-filed rule is just one of many doctrines that cabin

---

[86] For example, the Federal Rules of Civil Procedure only permit a plaintiff to dismiss a suit voluntarily, without court approval, "before the opposing party serves either an answer or a motion for summary judgment," or by stipulation of all parties. Fed. R. Civ. P. 41(a)(1)(A). Principles of estoppel may also limit a plaintiff's choices. The plaintiffs here, for example, told the Louisiana District Court that they filed the Delaware cases only to preserve their right to litigate there in the event of an adverse timeliness ruling. If the Louisiana District Court had concluded that the plaintiffs' claims were in fact timely, the plaintiffs arguably would have been estopped from litigating anywhere else.

duplicative litigation. It does not need to do all of the work on its own.

Moreover, we are skeptical of the defendants' characterization of the facts giving rise to the present appeal. The assertion that the plaintiffs engaged in impermissible forum shopping depends on the proposition that the plaintiffs acted improperly by trying to preserve their right to litigate in two different jurisdictions. In view of the unusual circumstances surrounding these cases, we simply disagree.

While reasonable minds may differ about what constitutes forum shopping in any particular case, the term generally denotes some attempt to gain an unfair or unmerited advantage in the litigation process. But here, the plaintiffs were indifferent as to *which* court would hear their claims; they simply wanted *a* court to hear their claims. Indeed, the traditional rule is that a timeliness dismissal in one jurisdiction does not bar litigation of the same claim in another forum with a longer limitations period.[87] Nor were

---

[87] Wright and Miller characterize the traditional rule as stating that "dismissal on limitations grounds merely bars the remedy in the first system of courts, and leaves a second system of courts free to grant a remedy that is not barred by its own limitations rules." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 4441, at 224 (2d ed. 2002). Similarly, the Restatement (Second) of Judgments says that a timeliness dismissal generally "operates as a bar in the jurisdiction in which it is rendered" but "does not preclude an action in another jurisdiction if that jurisdiction would apply a statute of limitations that has not yet run." Restatement

the plaintiffs negligent in failing to research the applicable timeliness rules in Louisiana and Delaware. The law was simply unclear. Once the Texas state court denied the plaintiffs' motion for class certification in 2010—nearly two decades after this litigation began—the plaintiffs could only guess whether other jurisdictions would recognize cross-jurisdictional class action tolling and conclude that their claims were timely. Louisiana and Delaware addressed that issue only *after* the plaintiffs filed suit in Louisiana—and even then reached divergent conclusions.[88]

Whatever else the first-filed rule demands, it does not require litigants to see through a glass darkly in order to predict whether a court will consider their claims timely. In our view, the defendants have not pointed to a single advantage, "either legally, practically, or tactically," that the

---

(Second) of Judgments § 19 cmt. f & Reporter's Note to cmt. f (1982).

[88] *Compare Blanco*, 67 A.3d at 397 (stating that the Supreme Court's rationale in *American Pipe* "is equally sound regardless of whether the original class action is brought in the same or in a different jurisdiction as the later individual action"), *with Quinn*, 118 So. 3d at 1022 ("We believe the rationale of the courts rejecting 'cross-jurisdictional tolling' is the one most consistent with our interpretation of the provisions of Louisiana's tolling statute . . . .").

plaintiffs sought by suing in two different jurisdictions.[89]  The plaintiffs were not trying to game the system by filing duplicative lawsuits.  They were trying to find one court, and only one court, willing to hear the merits of their case.

Accordingly, we hold that the Delaware District Court abused its discretion under the first-filed rule by dismissing these cases with prejudice.

## III.    Personal Jurisdiction over Chiquita Brands International

This brings us to the second issue in this appeal.  The Delaware District Court concluded that it lacked personal jurisdiction over one of the defendants, Chiquita Brands International, and granted its motion to dismiss.  The plaintiffs appeal that decision.[90]  While the Delaware District Court did not err by holding that personal jurisdiction was wanting, we conclude that it did err by dismissing Chiquita Brands International from this litigation altogether.  Instead,

---

[89] *Young v. Cuddington*, 470 F. Supp. 935, 938 (M.D. Pa. 1979) (in the absence of evidence of forum shopping, transferring a plaintiff's case, which would have been time-barred in Pennsylvania, to a district court in a state with a longer statute of limitations).

[90] We review the Delaware District Court's dismissal for lack of personal jurisdiction *de novo*, *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma S.A.*, 623 F.3d 147, 155 (3d Cir. 2010), and we review its decision denying the plaintiffs' request to conduct jurisdictional discovery for abuse of discretion, *id.* at 157.

the Delaware District Court had a statutory obligation to transfer the claims against that defendant to another district court where personal jurisdiction would be present.

Personal jurisdiction over a defendant may be either general or specific.[91] A court exercises general jurisdiction over a defendant when the plaintiff's claim arises out of that defendant's "continuous and systematic" contacts with the forum state.[92] Specific jurisdiction, by contrast, is present "when the cause of action arises from the defendant's forum related activities."[93] The plaintiffs do not assert that the Delaware District Court had specific jurisdiction over Chiquita Brands International, limiting our analysis to the question of general jurisdiction alone.

The Supreme Court recently revisited the issue of general jurisdiction in *Daimler AG v. Bauman*.[94] There, the Supreme Court explained that general jurisdiction over a foreign corporation typically arises only when that corporation's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the

---

[91] *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984).

[92] *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 n.3 (3d Cir. 1996) (citing *Helicopteros*, 466 U.S. at 414 n.9, 416; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985)).

[93] *Id.* at 151 (quoting *N. Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 690 (3d Cir. 1990)).

[94] 134 S. Ct. 746 (2014).

forum State."[95]  *Daimler* also explained that a corporation is generally "at home" in its "place of incorporation and principal place of business."[96]  Applying these principles, one of our sister circuits has commented that it is "incredibly difficult to establish general jurisdiction [over a corporation] in a forum *other* than the place of incorporation or principal place of business."[97]

Against this backdrop, Chiquita Brands International argues that it was never "at home" in Delaware, and we agree. The company is not incorporated there, does not maintain an office there, and does not supervise its business there. While the plaintiffs recognize as much, they contend that Chiquita Brands International engaged in other contacts with Delaware sufficient to create general jurisdiction there. On the record before us, we discern no error in the Delaware District Court's conclusion to the contrary.

But that is not the end of the matter. Chiquita Brands International is incorporated in New Jersey, and the plaintiffs asked the Delaware District Court to transfer their claims against Chiquita to the New Jersey District Court if it concluded that personal jurisdiction was lacking. The Delaware District Court refused. Following the plaintiffs'

---

[95] *Id.* at 761 (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (internal quotation marks omitted).

[96] *Id.* at 760 (internal citations and quotation marks omitted).

[97] *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (emphasis added).

41

lead, it focused on the federal statute governing transfer of venue, 28 U.S.C. § 1406(a), which states that if a district court concludes that a plaintiff has sued "in the wrong division or district," the district court "shall dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought."[98] The Delaware District Court concluded that "[t]he policies behind the first-filed rule mean that transferring the case to New Jersey would not be in the interest of justice."[99]

We disagree. In the first place, the statutory provision applicable in these circumstances is arguably not 28 U.S.C. § 1406(a), but rather 28 U.S.C. § 1631, which governs transfer when there is "a want of jurisdiction."[100] In any event, the statutory directive is the same—namely, a district "shall, if it is in the interest of justice, transfer [the case] to any other such court in which the action or appeal could have been brought at the time it was filed."[101] Here, we conclude that the interest of justice requires transfer rather than dismissal. The Delaware District Court's contrary determination flowed solely from its mistaken application of the first-filed rule. As we have explained previously, that rule protects comity among federal courts and prevents the

---

[98] 28 U.S.C. § 1406(a).

[99] *Chavez*, 947 F. Supp. 2d at 444.

[100] *See Fed. Home Loan Bank of Bos. v. Moody's Corp.*, 821 F.3d 102, 114 (1st Cir. 2016) (concluding that the phrase "'want of jurisdiction' encompasses both personal and subject matter jurisdiction").

[101] 28 U.S.C. § 1631.

42

needless duplication of judicial efforts; it does not mechanistically support permanent dismissal of a plaintiff's claims.

We will therefore vacate the Delaware District Court's dismissal of Chiquita Brands International and remand with instructions to grant the plaintiffs' request for a transfer to the District of New Jersey.

## IV.  The Delaware Actions Are Not Barred by Res Judicata

This brings us to the final and most doctrinally complex issue in this appeal—namely, whether the Louisiana District Court's timeliness dismissals ought to have a claim-preclusive effect in Delaware. The Delaware District Court did not rule on this issue in light of its application of the first-filed rule, but both sides have briefed the issue before us.[102] While we could, and perhaps normally would, remand the issue for consideration by the Delaware District Court in the first instance, there are countervailing reasons to address the res judicata question sooner rather than later.

It is true that "[w]e ordinarily decline to consider issues not decided by a district court, choosing instead to allow that court to consider them in the first instance."[103] Still, we have made exceptions for disputes of particularly

---

[102] *See* Pls.' Opening Br. at 25–28; Joint Defs.' Br. at 31–36; Pls.' Reply Br. at 14–21.

[103] *Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 401 (3d Cir. 2010).

long "vintage," particularly when as a "matter of judicial economy" it makes sense to "accelerate [a case's] resolution to the extent reasonably possible."[104]

If a case were ever in need of judicial acceleration, it is this one. We see little utility in remanding the res judicata question when that issue raises what is, at bottom, a pure question of law. We will therefore resolve the res judicata question now.

## A.     The Inquiry under *Semtek*

The plaintiffs' claims in Louisiana were dismissed as time-barred by a federal district court sitting in diversity and applying Louisiana law. The question we confront is whether the Louisiana dismissals prevent a federal district court in Delaware, sitting in diversity and applying Delaware's timeliness rules, from reaching the merits of the plaintiffs' claims.

The Supreme Court's decision in *Semtek International Inc. v. Lockheed Martin Corp.*[105] tells us how to approach this question. *Semtek* instructs us that the preclusive effect of a timeliness dismissal entered by a federal court, whether exercising its diversity or federal question jurisdiction, is always a question of federal law.[106] *Semtek* also recognizes

---

[104] *R & J Holding Co. v. Redev. Auth. of Cty. of Montgomery*, 670 F.3d 420, 429 (3d Cir. 2011).

[105] 531 U.S. 497 (2001).

[106] *Id.* at 507–08.

that, at common law, the traditional rule was that "expiration of the applicable statute of limitations merely bars the remedy and does not extinguish the substantive right, so that dismissal on that ground does not have claim-preclusive effect in other jurisdictions with longer, unexpired limitations periods."[107]   Notwithstanding this traditional rule, *Semtek* held that, in a case raising issues of cross-jurisdictional claim preclusion resulting from a diversity court's dismissal, faithfulness to *Erie* requires courts assessing the claim-preclusive effect of that dismissal to look to the substantive law of the state where the federal diversity court sits.[108]  This means that the claim-preclusive effect of a dismissal issued by a federal diversity court varies by jurisdiction.[109]

---

[107] *Id.* at 504.  The rule's pedigree goes back to at least 1834, when Justice Story noted in *Bank of the United States v. Donnally*, 33 U.S. 361 (1834), that a dismissal under a Virginia statute of limitations would "operate as a bar to a subsequent suit in the same state; but not necessarily as an extinguishment of the contract elsewhere."  *Id.* at 370.

[108] *Semtek*, 531 U.S. at 508.  *Semtek* characterized the goal of the Supreme Court's watershed decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), as aiming to prevent "'substantial variations [in outcomes] between state and federal litigation' which would '[l]ikely . . . influence the choice of a forum.'"  *Semtek*, 531 U.S. at 504 (punctuation modified and bracketed text in original) (quoting *Hanna v. Plumer*, 380 U.S. 460, 467–68 (1965)).

[109] *Semtek*, 531 U.S. at 508 ("Since state, rather than federal, substantive law is at issue there is no need for a uniform federal rule.").

*Semtek* itself dealt with the claim-preclusive effect of a timeliness dismissal entered by a federal diversity court sitting in California. Under the rule *Semtek* announced, "the claim-preclusive effect" of that dismissal "is governed by a federal rule that in turn incorporates California's law of claim preclusion."[110]

*Semtek* thus directs us to evaluate the res judicata effects of the Louisiana District Court's timeliness dismissals by looking to Louisiana's law of claim preclusion. When we do so, we have little trouble concluding that Louisiana courts treat timeliness dismissals as judgments on the merits that have claim-preclusive effects.[111] But that, in and of itself, does not decide the issue we now confront.

We begin by noting that there is an important ambiguity in *Semtek* itself. *Semtek* alludes only briefly to the fact that a state might apply two rules simultaneously: first, that a timeliness dismissal precludes re-litigation of the same claims *within* that state; and second, that a timeliness dismissal does not bar litigation of the same claims in a court *outside* that state.[112] To frame the problem in the context of

---

[110] *Id.* at 509.

[111] *See, e.g., Sours v. Kneipp*, 923 So. 2d 981, 984 (La. Ct. App. 2006) ("[A] judgment [on statute of limitations grounds] is not a mere interlocutory judgment deciding preliminary matters, but a final judgment on the merits that terminates the action with prejudice.").

[112] The respondent in *Semtek*, Lockheed Martin Corp., argued that a diversity court's timeliness dismissal is *always* claim-preclusive in other jurisdictions by operation of Federal

this appeal, the fact that timeliness dismissals are claim-preclusive *within* Louisiana may not necessarily mean that such dismissals extinguish related claims in *other* states with longer limitations periods.

While fact patterns raising this issue are perhaps uncommon, they are not unheard of. The Supreme Court of Connecticut, for example, addressed the issue of cross-jurisdictional claim preclusion in *Advest, Inc. v. Wachtel*.[113] That case arose after a state court in Connecticut dismissed a suit on timeliness grounds and the plaintiffs in that action then commenced an arbitration proceeding in New York. The defendants in the first action asked the state court to enjoin the arbitration proceedings as claim-precluded, which the

---

Rule of Civil Procedure 41(b). The Supreme Court rejected that proposition. In doing so, it looked to the provision of the Rules Enabling Act stating that a federal rule "shall not abridge, enlarge or modify any substantive right." *Semtek*, 531 U.S. at 503 (quoting 28 U.S.C. § 2072(b)). It reasoned that "if California law left petitioner free to sue on [a] claim in Maryland even after the California statute of limitations had expired, the federal court's extinguishment of that right (through Rule 41(b)'s mandated claim-preclusive effect of its judgment) would seem to violate this limitation." *Id.* at 503–04. This reasoning seems to recognize that a state might adopt, as a principle of its own substantive law, the view that a timeliness dismissal in its own courts is not claim-preclusive in other states.

[113] 668 A.2d 367 (Conn. 1995).

47

state court refused to do.[114] The Connecticut Supreme Court affirmed that decision on appeal. It stated that while "the running of Connecticut's statute of limitations precludes the defendants in the present action from bringing the same claim in Connecticut, it does not automatically bar their pursuit of such a claim in another jurisdiction."[115]

The Seventh Circuit, too, noted in *Reinke v. Boden*[116] that states might adopt different policies about intra- and extra-jurisdictional claim preclusion. The plaintiff there sued in Minnesota state court, lost at summary judgment on timeliness grounds, and then sued again in federal district court in Illinois. The defendant moved for summary judgment in Illinois on the ground of res judicata, and the Illinois District Court granted the motion. The Seventh Circuit reversed. It explained that "[i]n the context of the intersystem use of res judicata . . . the intent of the first forum to save the judicial resources of the second cannot be so readily presumed."[117] With this distinction in mind, the Seventh Circuit surveyed Minnesota jurisprudence and concluded that Minnesota courts did not necessarily intend for timeliness dismissals to be claim-preclusive *outside* Minnesota.[118] Other courts have cited *Reinke*, even post-*Semtek*, to support the proposition that a state might apply res

---

[114] *Id.* at 368–69.

[115] *Id.* at 371.

[116] 45 F.3d 166 (7th Cir. 1995).

[117] *Id.* at 171.

[118] *Id.* at 172.

judicata principles differently when an allegedly duplicative suit is filed in another court system.[119]

Unlike the Connecticut Supreme Court, the Louisiana Supreme Court has not directly addressed the issue of whether Louisiana timeliness dismissals are claim-preclusive in other jurisdictions. The Louisiana Court of Appeal, however, has indicated that the dismissal of a plaintiff's claim as time-barred in one court system is not necessarily claim-preclusive in another.

The key case is *Griffin v. BSFI Western E & P, Inc.*[120] The plaintiffs there sued in Louisiana state court on a variety of state-law claims and then filed a second, diversity-based suit in federal district court in Louisiana arising from the same facts.[121] The federal suit raised both federal question

---

[119] *See, e.g.*, *Havens v. Mabus*, 759 F.3d 91, 99 (D.C. Cir. 2014) (distinguishing intra-system claim preclusion from "determining the effect of a dismissal . . . on a second suit brought in a *different* court and, most important here, applying a *different* statute of limitations"); *see also* *Joseph v. Athanasopoulos*, 648 F.3d 58, 68 (2d Cir. 2011) (certifying to the New York Court of Appeals the question of whether a timeliness dismissal under one of that state's civil practice rules "amount[s] to an adjudication 'on the merits' for res judicata purposes, such that the plaintiff cannot litigate her claim in another jurisdiction with a longer, unexpired limitations period").

[120] 812 So. 2d 726 (La. Ct. App. 2002).

[121] *Id.* at 729.

claims and pendent state-law claims. The Louisiana District Court dismissed certain of the plaintiffs' federal claims on timeliness grounds under the applicable federal statute of limitations and dismissed some of the state-law claims without prejudice.[122] The defendants then moved to dismiss the state suit as res judicata in light of the federal dismissals. The Louisiana trial court granted the motion, but the Court of Appeal reversed.

The Court of Appeal began its analysis by stating that "[t]he dismissal of an action under a federal statute of limitations constitutes a final judgment on the merits in federal court, and is res judicata as to successive actions arising from the same transaction filed in other federal courts."[123] Even so, the court recognized that "a claim dismissed under a traditional statute of limitations does not automatically preclude consideration of the substantive merits by a different or foreign court system, especially 'in other jurisdictions with longer, unexpired limitations periods.'"[124]

Relying in part on the Seventh Circuit's decision in *Reinke*, the *Griffin* Court reasoned that, in a cross-jurisdictional situation, Louisiana's law of claim preclusion incorporates basic notions of equity and fairness. Accordingly, a court in such a situation should consider "the goal of res judicata principles," including that "litigation must eventually have an end," while remaining sensitive to "the

---

[122] *Id.* at 732–33.

[123] *Id.* at 731.

[124] *Id.* at 732 (quoting *Semtek*, 531 U.S. at 504).

50

plaintiff's right of access to the courts."[125]  *Griffin* explained that when the Louisiana District Court dismissed the plaintiffs' claims under the federal statute of limitations, it had "refused to consider . . . tolling based on acts of the defendants," which was "an exception recognized in Louisiana."[126]  Consequently, the Court of Appeal concluded that "the federal and state time limitation rules are too different to foster both the goals of res judicata and the plaintiffs' right to present his claim to a court."[127]  In such circumstances, where two sovereigns would apply two different limitations periods, "[d]efendants may not justly deny plaintiffs their day in court by erecting only a procedural screen."[128]

Other Louisiana cases have occasionally echoed this appreciation for the distinction between intra- and extra-

---

[125] *Id.*

[126] *Id.* at 735.

[127] *Id.*

[128] *Id.*

jurisdictional claim preclusion.[129]  One way to resolve the res judicata question in this appeal, therefore, would be to conclude that even if a Louisiana timeliness dismissal bars re-litigation of the same claims *within* Louisiana, it does not bar litigation of those claims elsewhere.

As it turns out, however, our resolution of these cases does not depend on the distinction between intra- and extra-jurisdictional claim preclusion.  While we have wrestled with that distinction before,[130] such an analysis raises certain deep

---

[129] *See Barnett v. Nichols*, 824 So. 2d 485, 489 (La. Ct. App. 2002) (concluding that the timeliness dismissal of a RICO claim in federal court did not bar a state-court suit arising from the same facts, in part because the claims were being litigated in "different judicial systems" and were "not subject to the same prescriptive periods"); *Tolis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 655 So. 2d 747, 757 (La. Ct. App. 1995), *vacated on procedural grounds*, 660 So. 2d 1206 (La. 1995) (Barry, J., concurring) ("[T]he res judicata effect of a dismissal based on prescription depends in part on whether the successive actions are within the same or different system of courts." (internal quotation marks and citation omitted)).

[130] We previously addressed the issue of extra-jurisdictional claim preclusion in *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132 (3d Cir. 1999).  We there considered the proper application of New Jersey's "entire controversy doctrine," which we described as "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Id.* at 135.  Conducting an extensive *Erie* analysis, we stated

52

that "New Jersey's main justification for the doctrine, its interest in preserving its judicial resources, is minimized when none of the prior litigation took place in New Jersey state courts." *Id.* at 142. We therefore concluded that federal principles of claim preclusion, not the entire controversy doctrine, governed the effects of a diversity dismissal in the New Jersey District Court, largely because "New Jersey has no significant interest in controlling the dockets of other court systems." *Id.* at 144.

Few courts have considered whether and to what extent *Semtek* and *Paramount Aviation* are compatible. At least one court has concluded that the two cases work hand-in-glove. On this view, *Semtek* says that, consistent with *Erie*, we assess the claim-preclusive effects of a judgment issued by a federal court sitting in diversity by looking to the substantive law of the relevant state, and *Paramount Aviation* tells us that New Jersey's entire controversy doctrine is more akin to a procedural rule, not a substantive one, and that, under *Erie*, a federal court need not apply it. *See Yantia N. Andre Juice Co. v. Kupperman*, No. 05-cv-01049 (WJM), 2005 WL 2338854, at *3 n.2 (D.N.J. Sept. 23, 2005) ("In *Semtek*, the Court held that federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity. The federal common law applicable in our case, however, is provided by *Paramount* . . . ." (internal quotation marks and citation omitted)).

Our Court has addressed the issue once in a non-precedential opinion, *McHale v. Kelly*, 527 F. App'x 149 (3d Cir. 2013). Because the claims at issue there were precluded irrespective of whether we applied New Jersey or federal law,

questions about the structure of our federal system that are perhaps better left for another day.[131]  Instead, having reviewed the relevant Louisiana precedents, we are confident that a Louisiana court would decline to apply res judicata to

---

we declined to decide "whether *Semtek* or *Paramount Aviation* controls." *Id.* at 151.

[131] For example, in *Thomas v. Washington Gas Light Co.*, 448 U.S. 261 (1980), a four-justice plurality of the Supreme Court expressed the view that, in the context of the Full Faith and Credit Clause, states lack the power to determine the extraterritorial effects of their own judgments.  The Court feared that the opposite conclusion would "risk[] the very kind of parochial entrenchment on the interests of other States that it was the purpose of the Full Faith and Credit Clause and other provisions of Art. IV of the Constitution to prevent." *Id.* at 272.

At least one scholar has therefore noted that there may be some tension between *Thomas* (states cannot dictate the consequences of their judgments in other jurisdictions) and *Semtek* (the exterritorial import of a timeliness dismissal entered by a diversity court depends on state law—including, perhaps, the state's views on extraterritorial claim preclusion).  *See* Stephen B. Burbank, Semtek*, Forum Shopping, and Federal Common Law*, 77 Notre Dame L. Rev. 1027, 1052 (2002) ("Perhaps . . . the [Supreme] Court believes that whether a state court judgment dismissing a case on limitations grounds is preclusive in subsequent litigation in another state depends upon the rendering court's views on a question it is without power to decide.").

the plaintiffs' claims even without invoking the logic of *Griffin* and similar cases.

### B. Louisiana's Law of Res Judicata Does Not Bar the Plaintiffs' Claims

We begin with an important foundational principle. The Louisiana Supreme Court has stated that res judicata is such a drastic procedural device that "any doubt concerning [its] application . . . must be resolved against its application."[132]   Or, as the Fifth Circuit has put it, "Louisiana's doctrine of res judicata can only be invoked if all essential elements are present and established beyond all question."[133]

What's more, Louisiana's rules of claim preclusion are not absolute.  The Louisiana Supreme Court has explained that "[o]ne of the goals of res judicata is to promote judicial economy and fairness," and that applying the doctrine "blindly or mechanically . . . does not foster judicial economy

---

[132] *Kelty v. Brumfield*, 633 So. 2d 1210, 1215 (La. 1994).

[133] *Lafreniere Park Found. v. Broussard*, 221 F.3d 804, 809 (5th Cir. 2000).

or fundamental fairness to the parties."[134]  Courts should therefore not use res judicata "as a scythe applied mechanically to mow down claims where the party asserting the claim is not at fault for the lack of adjudication of that claim in the first suit."[135]

At common law, Louisiana's doctrine of res judicata included a safety valve for "exceptional circumstances" sufficient to overcome "the policies favoring preclusion of a second action."[136]  When Louisiana adopted a new statute

---

[134] *Terrebonne Fuel & Lube, Inc. v. Placid Ref. Co.*, 666 So. 2d 624, 635 (La. 1996).  While *Terrebonne* involved application of federal, not state, principles of res judicata, we nonetheless consider it instructive because the Louisiana Supreme Court has since explained that *Terrebonne*'s discussion of claim preclusion is relevant to construing Louisiana's own res judicata statute.  *See Oliver v. Orleans Par. Sch. Bd.*, 156 So. 3d 596, 619 (La. 2014) ("While *Terrebonne* was decided under federal law, we noted in a footnote that the 1991 amendment adding La. R.S. 13:4232 'was also enacted to include similar exceptions . . . .'" (quoting *Terrebonne*, 666 So. 2d at 632 n.4)).

[135] *Terrebonne*, 666 So. 2d at 635.

[136] *Id.* at 632 (citing Restatement (Second) of Judgments § 26).

governing res judicata in 1990, it codified this exception.[137] The relevant statutory provision states that "[a] judgment does not bar another action by the plaintiff . . . [w]hen exceptional circumstances justify relief from the res judicata effect of the judgment."[138] Courts considering whether to apply this exception "exercise [their] equitable discretion to balance the principle of res judicata with the interests of justice," recognizing that relief is appropriate "only in truly exceptional cases."[139]

Louisiana courts have held that the statutory exception to res judicata "generally applies to complex procedural situations in which litigants are deprived of the opportunity to present their claims due to unanticipated quirks in the system."[140] So, for example, the Court of Appeal applied the exception in *Simmons v. Baumer Foods, Inc.*,[141] a wrongful death and workman's compensation case that bounced around

---

[137] *Id.* at 632 n.4 (explaining that res judicata is governed in Louisiana by La. Rev. Stat. Ann. § 13:4231, but that a "companion statute," La. Rev. Stat. Ann. § 13:4232, contains various exceptions under which the normal rules of claim preclusion do not apply).

[138] La. Rev. Stat. Ann. § 13:4232(A)(1).

[139] *Oleszkowicz v. Exxon Mobil Corp.*, 156 So. 3d 645, 647 (La. 2014) (quoting 1990 cmt. to La. Rev. Stat. Ann. § 13:4232).

[140] *Id.* at 648 (quoting *Kevin Assocs., LLC v. Crawford*, 917 So. 2d 544, 549 (La. Ct. App. 2005)).

[141] 55 So. 3d 789 (La. Ct. App. 2010).

from court to court without the plaintiffs ever having had the opportunity to present their claims on the merits before the defendants invoked res judicata as a bar to relief. In those circumstances, where the plaintiffs had "vigorously pursued their claims but the substance of [those] claims . . . [had] yet to be addressed," the Court of Appeal concluded that the "pursuit of justice ha[d] been derailed by . . . procedural determinations" and an exception to res judicata was appropriate.[142]

Federal courts, too, have applied Louisiana's statutory exception to res judicata in appropriate circumstances. The Eighth Circuit, for example, relied on the exception in *Follette v. Wal-Mart Stores, Inc.*[143] That case arose from, of all things, an exploding can of hairspray. The plaintiffs, who were Louisiana residents, initially sued in federal district court in Texas, in part because the one-year Louisiana statute of limitations had already run. The Texas court transferred the case back to Louisiana, where the district court dismissed the case on timeliness grounds. The plaintiffs then brought another suit in federal court in Arkansas, suing under a different cause of action with a longer limitations period. This raised the question of whether the previous dismissal in Louisiana created a res judicata bar vis-à-vis the Arkansas suit. The Eighth Circuit concluded that it did not. Surveying the cases applying Louisiana's equitable exception to res judicata, it concluded that Louisiana courts were hesitant to invoke principles of claim preclusion when doing so would

---

[142] *Id.* at 794.

[143] 41 F.3d 1234 (8th Cir. 1994), *on reh'g on another issue*, 47 F.3d 311 (8th Cir. 1995).

create a "procedural windfall" for defendants,[144] especially when "[t]he merits of the plaintiffs' claims had not [yet] been reached."[145]

The logic of *Simmons* and *Follette* applies with equal force to the situation we confront now. As in *Simmons*, the plaintiffs here have "vigorously pursued their claims" only to be met at every moment with procedural hurdles.[146] We believe that a Louisiana court, faced with these facts, would conclude that the byzantine procedural history of this case merits an exception to Louisiana's normal rules of claim preclusion.

As Wright and Miller recognize, "[a]mong the weakest cases for preclusion would be one in which the plaintiffs were legitimately surprised by the limitations ruling in the first action; unlike a dismissal for failure to state a claim, there is nothing to be done about a limitations bar unless it is to find a forum with a longer period."[147] Just so. In this case, the plaintiffs had no way to predict that the Louisiana Supreme Court would reject cross-jurisdictional class action tolling in *Quinn*, thereby rendering their claims untimely in Louisiana courts. While parties should be prevented from "burdening courts with claims already litigated," we must be "mindful of

---

[144] *Id.* at 1238 (quoting *Billiot v. LeBeouf Bros. Towing Co.*, 640 So. 2d 826, 829 (La. Ct. App. 1994)).

[145] *Id.*

[146] *Simmons*, 55 So. 3d at 794.

[147] 18A Federal Practice and Procedure: Jurisdiction § 4441, *supra* note 87, at 231.

not barring plaintiffs from having their day in court by overzealously preventing them from having two days in court."[148]  We think a Louisiana court would reach the same conclusion.[149]

The defendants' contrary arguments are not persuasive.  While the defendants recognize that, under *Semtek*, Louisiana law controls our res judicata analysis, they contend that Louisiana has adopted, as a principle of its own substantive law, the view that *federal* rules of claim preclusion dictate the effects of judgments entered by federal diversity courts.  On this account, neither Louisiana's res judicata statute nor its equitable exception should inform our analysis.  In support of this proposition, the defendants rely on a single unpublished opinion of the Fifth Circuit.[150]

---

[148] *Rick v. Wyeth*, No. 08-cv-1287 (ADM), 2010 WL 3894063, at *4 (D. Minn. Sept. 23, 2010), *aff'd*, 662 F.3d 1067 (8th Cir. 2011).

[149] The commentary to the relevant Louisiana statute explains that exceptions to claim preclusion ought not apply "where the plaintiff has simply failed to assert a right or claim . . . through oversight or lack of proper preparation." 1990 cmt. to La. Rev. Stat. Ann. § 13:4232.  For the reasons explained above, we do not think this is such a case.

[150] *Frank C. Minvielle LLC v. Atl. Ref. Co.*, 337 F. App'x 429, 434 (5th Cir. 2009) ("Louisiana courts have repeatedly confirmed that federal law is applicable to consideration of whether a federal court judgment has res judicata effect." (internal quotation marks omitted)).

The defendants are wrong. It is true that, before *Semtek*, Louisiana courts stated that the claim-preclusive effect of all federal judgments was controlled by federal principles of claim preclusion.[151] Some Louisiana courts have said the same thing after *Semtek*, but only in cases involving federal question jurisdiction.[152] The defendants do not point to a single case in which a Louisiana court has chosen to ignore *Semtek* outright by looking to federal law, rather than state law, to assess the claim-preclusive effects of a judgment issued by a federal district court sitting in diversity.

To the contrary, federal district courts in Louisiana "appl[y] Louisiana law to determine the preclusive effect of

---

[151] *See, e.g.*, *Pilie & Pilie v. Metz*, 547 So. 2d 1305, 1309 (La. 1989) ("[F]ederal law must be applied in determining the basic res judicata effects of the diversity judgment in the present case.").

[152] *See, e.g.*, *Green v. Iberia Par. Sch. Bd.*, 945 So. 2d 940, 943 (La. Ct. App. 2006) ("[F]ederal law is applicable to consideration of whether a federal court judgment has res judicata effect.") (considering effect of a judgment entered by a federal court exercising both its federal question jurisdiction and supplemental jurisdiction over state-law claims).

[their] prior [diversity] judgments."[153]   The defendants'
contrary argument—that *Semtek* tells us to look to Louisiana
law, which then tells us to look back to federal law—is the
jurisprudential equivalent of holding two mirrors up to one
another, and we are comfortable rejecting it.

Next, the defendants rely on another Fifth Circuit case,
*Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.*,[154]
to argue that the plaintiffs' Delaware suits are barred by res
judicata.[155]   That case involved parallel actions pending in

---

[153] *Commercializadora Portimex, S.A. de CV v. Zen-Noh
Grain Corp.*, 373 F. Supp. 2d 645, 650 (E.D. La. 2005)
(applying *Semtek*).   Another unpublished opinion of the Fifth
Circuit suggests that Louisiana district courts are applying
*Semtek* correctly.   *See Tigert v. Am. Airlines Inc.*, 390
F. App'x 357, 362 (5th Cir. 2010) (citing *Semtek* for the
proposition that Louisiana law controls the preclusive effect
of a diversity judgment entered by a federal district court
sitting in Louisiana).

[154] 870 F.2d 1044 (5th Cir. 1989).

[155] In fact, the defendants fail to cite a different case,
*Austin v. Super Valu Stores, Inc.*, 31 F.3d 615 (8th Cir. 1994),
that arguably helps them more.   The plaintiffs there brought a
diversity suit in the Eastern District of Louisiana, lost on
timeliness grounds, and then brought a second diversity suit
in the District of Minnesota.   The Minnesota District Court
applied Louisiana law to conclude that the first dismissal was
claim-preclusive and dismissed the case.   The Eighth Circuit
affirmed.

federal district courts in Louisiana and Mississippi. The Louisiana District Court dismissed the plaintiffs' claims as time-barred under the applicable Louisiana statute of limitations. The defendants then moved to dismiss the Mississippi action as res judicata. The Mississippi District Court denied the motion, but the Fifth Circuit reversed. In its view, "[a]llowing plaintiffs who fail to comply with applicable statutes of limitations to move to the next state over would have the undesirable effect of encouraging forum shopping and rewarding dilatory conduct."[156]

While we appreciate that there are certain parallels between *Thompson Trucking* and the situation we confront today, we do not think *Thompson Trucking* is persuasive in the present context.

First, *Thompson Trucking* predated *Semtek*, leaving the Fifth Circuit free to reason that "the effect of a prior federal diversity judgment is controlled by federal rather than state

---

Importantly, the District Court in *Austin* said that the plaintiff had "pointed to nothing in . . . Louisiana law suggesting that a judgment that would be considered final and on the merits in the context of a second action brought in the same jurisdiction would not be considered to be final and on the merits in the context of a[n] action brought in another jurisdiction." *Austin v. Super Valu Stores, Inc.*, No. 4-92-cv-1059 (HHM), 1994 WL 409473, at *4 (D. Minn. May 17, 1994). Here, cases applying Louisiana's equitable exception to res judicata indicate precisely that.

[156] *Thompson Trucking*, 870 F.2d at 1046.

63

res judicata rules."[157]  Under *Semtek*, that is no longer correct. As Wright and Miller point out in their discussion of the case, the Fifth Circuit "applied federal preclusion principles without asking whether either Louisiana or Mississippi law would preclude a second action in Mississippi."[158]

Second, *Thompson Trucking* focused extensively on what it characterized as the plaintiffs' impermissible forum shopping.  While we understand these concerns—and indeed might find them persuasive in the appropriate case—they carry little weight here for the straightforward reason that the plaintiffs have not engaged in what we consider to *be* forum shopping.  As we explained earlier, the plaintiffs were not scouring multiple jurisdictions for more advantageous substantive law or more sympathetic fact-finders.  Instead, they were trying to find one court—and only one court— willing to reach the merits of their claims.

Accordingly, we conclude that Louisiana's statutorily-codified equitable exception to res judicata applies to the present facts.  Consistent with *Semtek*, we therefore hold that the timeliness dismissals entered by the Louisiana District Court do not create a res judicata bar to the plaintiffs' Delaware suits.  Rather than affirm the Delaware District Court's dismissals on this alternative ground, we will remand these cases for further proceedings.

---

[157] *Id.* at 1045.

[158] 18A Federal Practice & Procedure:  Jurisdiction § 4441 n.27, *supra* note 87, at 232.

## V. Issues on Remand

Among the issues the Delaware District Court will address on remand is the question of whether the plaintiffs' claims are timely under Delaware's applicable statute of limitations.[159]   The Delaware District Court recently addressed that issue in a related case, *Marquinez v. Dole Food Co.*[160]  While *Marquinez* acknowledged that Delaware accepts cross-jurisdictional class action tolling,[161]  it nonetheless concluded that any such tolling ended in 1995. *Marquinez* therefore held that Delaware's two-year statute of limitation had long since expired.[162]

In reaching that conclusion, *Marquinez* relied on an extremely fine-grained interpretation of what occurred in Texas in 1995.  In particular, *Marquinez* drew a distinction between the question of whether the Texas District Court's 1995 dismissal on *forum non conveniens* grounds restarted Delaware's statute of limitations clock, and whether the contemporaneous denial of the pending motion for class certification as moot did so.[163]  It is true, *Marquinez* noted,

---

[159] Judges Fisher, Chagares and Vanaskie would prefer to leave any consideration of the proper application of the Delaware statute of limitations to the Delaware District Court on remand in the first instance.

[160] 45 F. Supp. 3d 420 (D. Del. 2014).

[161] *Id.* at 422 (citing the Delaware Supreme Court's decision in *Blanco*, 67 A.3d at 394).

[162] *Id.* at 423.

[163] *Id.* (citing *Chaverri*, 896 F. Supp. 2d at 568).

that the Delaware Superior Court's *Blanco* decision addressed the first question, and in fact concluded that the Texas District Court's "original decision *to dismiss* did not start plaintiff's Delaware statute of limitations."[164]  But, said *Marquinez*, the Delaware Superior Court "did not reach the [other] question, which forms an alternative basis to end tolling."[165]

Contrary to *Marquinez*'s characterization, *Blanco* in fact summarized the defendants' argument that the "plaintiff[s] cannot rely on the [Texas] actions to toll the statute of limitations because all pending motions, including one for class certification, were denied as moot."[166]  In denying the defendants' motion for judgment on the pleadings, the *Blanco* Court appears to have rejected that assertion.  Indeed, *Blanco* went further still, stating that the "defendants have attempted to tranquilize these claims through repeated forum shopping removals and technical dismissals, playing for time and delay and striving to prevent, or arguably frustrate, the claims from ever being heard on the merits in any court."[167]

We also note that when the Texas District Court dismissed the class action in 1995, it did more than include a return clause in its dismissal order.[168]  It also entered

---

[164] *Blanco*, 2012 WL 3194412, at *12 (emphasis added).

[165] *Marquinez*, 45 F. Supp. 3d at 423.

[166] *Blanco*, 2012 WL 3194412, at *5.

[167] *Id.* at *12.

[168] *See supra* note 11.

injunctions that barred the named plaintiffs and "[a]ll persons . . . who receive actual notice of this judgment" from commencing any related actions "in any court in the United States."[169]

Both the return clause and the injunctions may be relevant under Delaware law. For example, in *Mergenthaler v. Asbestos Corporation of America*,[170] the Delaware Superior Court held that that "a court-imposed stay will result in a tolling of the statute of limitations where it prevents a plaintiff from discovering the identity of an otherwise unknowable defendant."[171] In support of that proposition,

---

[169] Final Judgment at 2, *Delgado v. Shell Oil Co.*, No. 94-cv-1337, ECF No. 393 (S.D. Tex. Oct. 27, 1995). The full sentence from the Texas District Court's judgment stated: "All persons in active concert or participation with plaintiffs and intervenors who receive actual notice of this judgment by personal service or otherwise, including, but not limited to, the attorneys who have appeared in these actions and their law firms, as well the officers, agents, servants, and employees of any of these persons, are **PERMANENTLY ENJOINED** from commencing or causing to be commenced any action involving a DBCP-related claim in any court in the United States, and from filing an intervention in *Rodriguez*, *Erazo*, or any other pending action in a court in the United States, on behalf of any plaintiff or intervenor plaintiff in *Delgado*, *Jorge Carcamo*, *Valdez*, and *Isae Carcacmo*." *Id.* at 2–3.

[170] 500 A.2d 1357 (Del. Super. Ct. 1985).

[171] *Id.* at 1365.

*Mergenthaler* cited *Braun v. Sauerwein*,[172] where the Supreme Court stated that when a plaintiff "has been disabled to sue, by a superior power, without any default of his own . . . unless the statutes cease to run during the continuance of the supervening disability, he is deprived of a portion of the time within which the law contemplated he might sue."[173]

Nor did *Marquinez* acknowledge that when the Texas District Court reinstated the class action in 2004, it framed its decision as "a direct continuation of the prior proceedings over which the court expressly stated its intent to retain jurisdiction."[174] Rather than look to these sources, *Marquinez* focused on cases from other jurisdictions that applied the state law of Louisiana and Hawaii, rather than the law of Delaware.[175]

We leave it to the Delaware District Court on remand to consider these issues and to perform its "duty . . . to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of 'general law.'"[176]

---

[172] 77 U.S. 218 (1869).

[173] *Id.* at 222–23.

[174] *Delgado*, 322 F. Supp. 2d at 813.

[175] *See Marquinez*, 45 F. Supp. 3d at 423, 425 n.9.

[176] *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940).

## VI. Conclusion

For over two decades, the plaintiffs have been knocking on courthouse doors all over the country and, indeed, the world, only for those doors to remain closed. The Delaware District Court concluded that, pursuant to the first-filed rule, its doors must remain shut as well.

That conclusion was in error. Neither the first-filed rule nor Louisiana's doctrine of res judicata is fatal to the plaintiffs' Delaware claims. We revive this litigation now, more than two decades after it began, while expressing our sincerest hope that it proceeds with more alacrity than it has to the present date.

Accordingly, we will vacate the Delaware District Court's dismissals and remand these cases for further proceedings consistent with this Opinion.