**Dorothy M. OPHER, Petitioner,**

v.

**Edward L. OPHER, Respondent.**

Family Court of Delaware,
New Castle County.

Submitted: March 4, 1987.
Decided: May 19, 1987.

Carolyn R. Schlecker, Community Legal Aid Soc., Inc., Wilmington, for petitioner.

Edward L. Opher, pro se.

ABLEMAN, Judge.

This is the Court's decision on a Motion for Relief From Judgment Pursuant to Rule 60(b)(1) filed by petitioner, Dorothy M. Opher, in the above-captioned divorce action. The motion was filed by petitioner on March 5, 1987. No response has been filed by respondent, Edward L. Opher, although petitioner's counsel has certified that she mailed two copies of the motion to respondent. The motion seeks relief, pursuant to Rule 60(b)(1) of the Family Court Rules, from an Order of this Court dated April 7, 1986, dismissing all ancillary matters in this action. For the purposes of this decision the procedural history of this case will be set forth hereafter.

On June 7, 1984, petitioner filed her Petition for Divorce in this Court alleging as grounds therefore that the marriage is "irretrievably broken characterized by a separation due to rape, marital and physical abuse by the respondent to the petitioner...." The petition also specifically requested that the Court retain jurisdiction to dispose of the marital property pursuant to 13 *Del.C.* § 1513, and to award her temporary and permanent alimony pursuant to 13 *Del.C.* §§ 1509, 1512.

Prior to the filing of the divorce petition, on June 20, 1984, petitioner had filed a petition alleging that respondent had imperilled the family relationship, requesting that he be excluded from the marital home, and requesting child support, custody, and counsel fees.

Respondent filed an Answer to the Petition for Divorce in which he denied that the parties had been living separate and apart and denied the allegation of misconduct. A contested divorce hearing was scheduled on November 20, 1984. At that hearing petitioner was represented by counsel and respondent was not. After trial, the Court found that the statutory prerequisites for the granting of a divorce had been met and a decree was entered on that date. On the same date an Order regarding the retention of ancillary jurisdiction was entered directing that a Rule 465 Financial Report/Pre–Trial Order be completed by petitioner on or before December 20, 1984. This Order warns, in bold face type, of the importance of complying with Rule 465:

THERE SHALL BE NO FURTHER NOTICE PROVIDED TO PARTIES OR COUNSEL WITH REGARD TO THE REQUIREMENTS OF FAMILY COURT RULE 465. IF *BOTH* PARTIES FAIL TO FILE THE FINANCIAL REPORT/PRE–TRIAL ORDER IN A TIMELY MANNER, THEN ALL ANCILLARY MATTERS SHALL BE DISMISSED 1/21/85. A party may request an extension of time in which to file the Financial Report/Pre-trial Order under the guidelines of Family Court RULE 142 for good cause shown.

Copies of the divorce decree and of the foregoing Order were thereafter sent to petitioner's counsel as well as to Kester I.H. Crosse, Esquire, who had by this time been retained by Husband.

Apparently, neither party did anything to complete or file the Financial Report prior to the date set forth in the Order nor was there an extension requested despite the fact that both parties were still represented by counsel. Petitioner signed a sworn affidavit releasing her attorney, Angelo Falasca, Esquire, and this document was received by the Court on August 28, 1985. In it petitioner stated that she did not wish Mr. Falasca to represent her at a custody hearing that was scheduled for the following day. That hearing was continued at

the request of respondent's counsel and trial eventually took place on November 25, 1985. After hearing, the Court awarded joint custody of the eleven children to both parents. Because the Court felt that the responsibility of having sole custody of all eleven children for either party would be overwhelming, it determined that the parties' seven daughters should reside primarily with the mother and the parties' four sons primarily with the father. At the time of the custody hearing the couple continued to reside in the marital residence as the ancillary matters had not yet been resolved.

During trial the Court questioned the parties with respect to the status of the property division and learned that the Rule 465 Joint Asset Report had not yet been filed despite the fact that it had been due almost a year earlier, on January 20, 1984. The Court noted that the report should have been filed but granted an additional thirty days for filing. In its written decision the Court specifically reiterated this deadline:

> Since Mrs. Opher has indicated that she was unaware through her prior attorney that she was required to file the Joint Asset Report for a pre-trial hearing, the parties will have thirty (30) days from this date to complete and file the Rule 465 Pre–Trial Order/Joint Asset Report, and the matter shall be referred to a Master for pre-trial hearing. The ancillary proceedings will be dismissed if the Rule 465 Pre–Trial Order/Joint Asset Reports are not filed within this thirty-day period.

Despite this clear directive, neither party filed anything. Finally, three and a half months after the thirty-day period had expired, and almost fifteen months after the Joint Asset Report was due under Family Court Rule 465, the matter was dismissed by Master Herlihy on April 7, 1986.

On March 4, 1987, almost a year later, Mrs. Opher filed the instant Motion for Relief From Judgment. In her motion she alleges that she was under "the mistaken impression and belief that if the pending action was dismissed that [she] would not

be barred from filing a petition requesting alimony and equitable division of marital property at a later time as permitted in other civil matters such as custody, child support, and imperilling the family relationship." Petitioner contends that her inaction constitutes mistake and/or excusable neglect pursuant to Rule 60(b)(1) and that the Court's dismissal leaves her without a legal or equitable remedy to seek a determination as to whom shall reside in the former marital residence and whom shall be responsible for maintenance and repair of the property. Moreover, the petitioner contends that, by virtue of the Court's dismissal, "Petitioner has been forced to continue residence under the same roof with the Respondent for more than two years after their divorce."

In an affidavit that was submitted in connection with the instant motion, petitioner states that she understood the Court's Order directing that the ancillary proceedings would be dismissed if she did not file her Joint Asset Report within thirty days (from November 25, 1985) but that she was unaware that she would thereafter be precluded from filing a new petition for alimony and property division at a later time. Also included in her affidavit is the following statement evidencing petitioner's reason for not complying with the Court's directive to file the Joint Asset Report:

> I was very disappointed and angry about the Court's decision of November 25, 1985 denying my request for sole custody of my children and granting joint custody with the respondent and further granting the respondent primary residence of the boys if the respondent and I decided to reside separately. Because I was angry and disappointed I did not complete the Joint Asset Report. I felt that the Court was not going to help me or render a just decision.

With this factual background in mind, I turn to the question of whether under Rule 60(b) this ancillary matter should be reopened. A motion to set aside a judgment pursuant to Rule 60(b) is addressed to the sound discretion of the Trial Court. *Model Finance Company v. Barton*, Del.Super.,

188 A.2d 233 (1963); *Battaglia v. Wilmington Savings Fund Society*, Del.Supr., 379 A.2d 1132 (1977). When a judgment is sought to be reopened on the ground of mistake and/or excusable neglect under Rule 60(b)(1) the Delaware Supreme Court has held that, to constitute excusable neglect, the conduct of the moving party must be the conduct of a reasonably prudent person. *Keith v. Melvin L. Joseph Construction Co., et al.*, Del.Supr., 451 A.2d 842 (1982). Additionally, the defaulting party must establish that the outcome would be different if the relief were granted and that substantial prejudice to the non-defaulting party will not result from the granting of the relief.

In the *Keith v. Melvin L. Joseph Construction Co., et al.*, case the plaintiff had filed a complaint for personal injuries resulting from a swimming accident in a dirt pit. One of the defendants, Melvin L. Joseph Construction Company, received service of process through its registered agent. Mistakenly believing that it was not liable, the defendant corporation ignored the service of process, did not consult with an attorney, and failed to answer or otherwise defend the suit. As a result, a default judgment was entered. The corporation subsequently petitioned to set aside the judgment. In holding that the ground of excusable neglect requires that the defaulting party's conduct be weighed by the conduct of a reasonably prudent person, the Court denied the motion, and refused to vacate the judgment, noting further that a "reasonably prudent person would have at least consulted with an attorney to ascertain his legal rights and obligations." *See also, Falcon Steel Company v. Maryland Casualty Co.*, Del.Super., 366 A.2d 512, 515 (1976); *Cohen v. Brandywine Raceway Association*, Del. Super., 238 A.2d 320 (1968).

■ Given the foregoing definition of excusable neglect, in my judgment petitioner clearly does not meet the test. Petitioner's conduct was not inadvertent or unknowing, nor did the requirement that the deadline for the Financial Report merely slip her mind. She openly acknowledges that she was "angry and disappointed" by the Court's custody decision and therefore did not complete the Joint Asset Report. In so doing she knowingly refused to comply with the Court's specific written directive and willfully chose a course of action that ultimately precluded her from obtaining the relief that she now belatedly seeks.

Petitioner also contends that she is entitled to relief on the ground that she *mistakenly* believed that she would be able to file a new petition for property division at some future date, even though she was specifically directed by the Court that the pending ancillary proceedings would be dismissed. She alleges that she was under the mistaken impression and belief that if the pending action was dismissed she would not be barred from filing a petition requesting alimony and equitable division of marital property at a later time as permitted in other civil matters.

■ "Mistake" under Rule 60(b) has different meanings depending on the kind of judgment sought to be opened. In the case of a default judgment, mistake, not amounting to gross negligence, which has operated to keep defendant out of court, would be grounds for relief. Where consent judgments are concerned, mistake must mean mutual mistake before a party attempts to avoid the judgment. *Keystone Fuel Oil Co. v. Del–Way Petroleum, Inc.*, Del.Supr., 364 A.2d 826 (1976).

■ In this case petitioner's claim of mistake is not the result of a misunderstanding that has operated to keep her out of Court. It was instead a mistaken belief on her part that she could have a "second chance" to litigate despite her deliberate defiance of Court Rules at her first opportunity to obtain relief. Even allowing that a unilateral mistake could provide the basis for reopening the judgment, petitioner's conduct amounted to gross negligence when she determined because she was not successful on the custody issue, to ignore the Order of the Court. Moreover, as the Court emphasized in the *Keystone* case, "[a]lleged mistakes of law, are not as favored as grounds for relief as are mistakes of fact." *See also, Patapoff v. Vollstedt's,*

267 F.2d 863 (9th Cir.1959). Here the mistake was one involving the effect of the law, not a factual misunderstanding. Since the Court must attribute to petitioner some minimal knowledge or duty to know with respect to the consequences of the entry of the judgment, *Keystone Fuel Oil Co. v. Del-Way Petroleum, Inc., supra* at 830, her claim of mistake cannot relieve her of the effects of her ignorance.

Petitioner relies upon the general principle that "liberality is highly favored where the opening of default judgments is concerned because of a basic underlying policy that prefers a defendant have his day in Court." She cites the decisions in *Keystone Fuel Oil Co. v. Del-Way Petroleum, Inc.*, Del.Super., 364 A.2d 826 (1976) and *Model Finance company v. Barton*, Del.Supr., 188 A.2d 233 (1963) as support for this position. While these cases do recognize the preference for hearing on the merits as opposed to a judgment by default, the cases dealing with default judgments are simply inapposite here. This is not a case in which a default occurred but, rather, one in which the petitioner had her day in Court. In fact, she had far more than her "day in Court" as the extraordinarily lenient extensions for filing demonstrate. These allotted petitioner what amounts to a 14½-month grace period for the filing of the papers before dismissal was finally entered in April 1986. As such, petitioner is not in the same position as a litigant who was never given the opportunity to assert a defense to an action for relief, or one who was precluded, through inadvertence, from espousing a position. It was petitioner who filed the instant action, it was she who consciously failed to comply with the Rules of the Court requiring the filing of the Rule 465 within thirty days after the granting of the .divorce, and it was petitioner who deliberately chose to ignore the express Order of this Court allowing her an extension to file, provided she do so within thirty days. Through petitioner's own flagrant disobedience of Court Rules and Orders, she alone has deprived *herself* of a remedy in this Court.

Indeed, the instant case is more analogous to the consent judgment situation in the *Keystone Fuel Oil* case. In that case the Court denied a Rule 60(b) motion to set aside a Consent Order. It was argued that the consent to the entry of judgment given by the President was a result of mistake on his part. In refusing to reopen the judgment the Court distinguished between default judgments where the mistake had operated to keep a defendant out of Court, and prevented him from having a trial on the merits (in which instance the Court would be more liberal in granting relief) from cases where a consent judgment was entered:

> Liberality is highly favored where the opening of default judgments is concerned because of a basic underlying policy which prefers that a defendant have his day in Court. A trial on the merits is considered superior to a default judgment. *Model Finance Company v. Barton, supra.* Also, frequently in default judgments where the ground for relief is "mistake", the mistake is something such as papers not being filed in time or the defendant not receiving notice, preventing the defendant from avoiding the default and being heard on the merits. Where a consent judgment is involved, however, the defendant has had an opportunity to have his day in court but has chosen to forego it. Any "mistake" does not, as with default, go the very entry of the judgment itself, but rather to the consent of the stipulation or the presence of consent. 364 A.2d at 828, 829.

Similarly, in this instance petitioner has had full opportunity for trial on the merits. Unlike a defendant who mistakenly failed to answer in time to avoid a default, petitioner was given more than fourteen months to pursue the relief that she affirmatively sought in the first place. Even accepting petitioner's assertion that she was mistaken in her belief that she could file a new petition, by her own admission she intentionally ignored the Rules of the Court in litigating the first one.

■ Nor does the fact that petitioner was not represented at the time she determined not to file the Rule 465 Pre-Trial

Order/Financial Report require a different result. The Delaware Supreme Court in *Connell v. Connell*, Del.Supr., No. 72,1985, Moore, J. (September 17, 1985) upheld the Family Court's refusal to reopen a judgment based upon a separation agreement into which the parties entered without the advice of counsel. In so doing the Court ruled that the trial judge did not abuse her discretion in concluding that the absence of legal advice did not amount to excusable neglect. *See, Cohen v. Brandywine Raceway Association*, Del.Super., 238 A.2d 320–35 (1968). Here, petitioner was represented for more than nine months after the date of the divorce, during most of which time the Report was overdue under Family Court Rule 465. Then too, it was petitioner who expressly chose to release her attorney by filing an affidavit to that effect.

■ Similarly, petitioner's circumstances do not justify relief under Rule 60(b)(6) which permits the Court in its discretion to reopen the judgment for "any other reason justifying relief". As an independent ground, relief under subsection (6) of the Rule is considered an extraordinary remedy and requires a showing of "extraordinary circumstances". *See, Jewell v. Division of Social Services*, Del.Supr., 401 A.2d 88 (1979); *Davidson v. Dixon*, 386 F.Supp. 482, 492–94, (D.Del.1974); *Keith v. Melvin Joseph Construction Company, supra* at 847. As the Court noted in the *Keith v. Melvin Joseph Construction Co.* case, "[e]xtraordinary circumstances do not exist, under the federal standard, where the conduct of the moving party has been intentional or willful. *Bridoux v. Eastern Airlines*, D.C.Cir., 214 F.2d 207 (1954)" *Id.* at 847. In language that applies equally to the case at bar, the United States District Court emphasized this concept in noting:

> The provision cannot be used, however, to relieve a party from the duty to take legal steps to protect his interests. If a party makes a free and conscious choice regarding the conduct of the litigation, he cannot be granted relief under Rule 60(b)(6) from the consequences of that decision.

*Bell Telephone Laboratories, Inc. v. Hughes Aircraft Co.*, 73 F.R.D. 16 (D.Del. 1976); *See also, In re Master Key Antitrust Litigation*, 76 F.R.D. 460 (1977). Similarly, petitioner cannot in this instance be granted relief from the decisions she has made in the course of the litigation. Given the intentional nature of her conduct she is precluded from relief under Rule 60(b)(6).

■ Finally, there is the factor of the untimeliness of the instant motion. Although petitioner asserts that she has been seriously prejudiced by her inability to file a new petition, she nevertheless waited an additional eleven months after dismissal before filing the instant application requesting that the Court now grant her ancillary relief. While the Rule provides no time limits for filing such motions, the Delaware Supreme Court has held that a plaintiff in such circumstances is obligated to act without unreasonable delay in filing the motion. *Schremp v. Marvel*, Del.Supr., 405 A.2d 119, 120 (1979); *Dixon v. Delaware Olds., Inc.*, Del.Supr., 405 A.2d 117 (1979); *See, Ramirez v. Rackley*, Del.Super., 70 A.2d 18, 21 (1949). Moreover, Rule 60(b) is not a substitute for a motion for a new trial or an appeal. *Dixon v. Delaware Olds., Inc., supra.*

In the *Schremp* case, the plaintiff argued that he did not authorize his attorney to enter a dismissal and did not learn of it until seven months after it was entered. Because the plaintiff waited an additional two months before filing the Rule 60(b) motion, the Court determined that his motion was untimely:

> ... Tested by the pace at which litigation often proceeds, that may not seem like a long time. But, measured by the inflexible time one has for appealing an adverse judgment (thirty days), 10 *Del.C.* §§ 145, 147, 148, or moving for a new trial (ten days), Superior Court Rule 59(b), or reargument in this Court (fifteen days), Supreme Court Rule 18, Dr. Schremp's motion was untimely. None of the delay we have identified was in any way charged to defendant.

Dr. Schremp's delay in his case pales by comparison to the procrastination of petitioner in the case at bar. Here, she waited almost eleven months from the date of the Order of Dismissal to file this motion. To allow relief in such egregious circumstances would encourage parties to disregard the procedures and time limits imposed elsewhere in the Court Rules. While the Court is cognizant of petitioner's predicament[1] it simply cannot grant the relief she seeks by reopening the ancillary proceedings in this case. To do so would render this Court's Rules and Orders of no consequence and virtually meaningless. Given the petitioner's willful disregard for those orders and rules, coupled with the unreasonable delay in filing the instant motion, this Court must deny the Motion for Relief From Judgment Pursuant to Rule 60(b)(1). IT IS SO ORDERED.

---

1. Since the major asset in this marriage is the residence of the parties, fortunately petitioner does have a remedy in the Court of Chancery for partition.