# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

EDUARDO ALVARADO
CHAVERRI, et al.,

  Plaintiffs,

  v.       C.A. No. N12C-06-017 ALR

DOLE FOOD COMPANY, INC.,
et al.,

  Defendants.

Submitted: September 25, 2019
Decided: November 8, 2019

***Upon Plaintiffs' Motion to Vacate Judgment Under Rule 60(b)(6)***
**DENIED**

## MEMORANDUM OPINION

Andrew C. Dalton, Esquire, Dalton & Associates, P.A., Wilmington, Delaware, Scott M. Hendler, Esquire, Hendler Flores, PLLC, Austin, Texas, Attorneys for Plaintiffs.

Somers S. Price, Jr., Esquire, Potter, Anderson & Corroon LLP, Wilmington, Delaware; Andrea Neuman, Esquire, Thomas Manakides, Gibson, Dunn & Crutcher, New York, New York, Attorneys for Defendants Dole Food Company, Inc., Dole Fresh Fruit Company, Standard Fruit Company, and Standard Fruit and Steamship Company.

Adam Orlacchio, Esquire, Brandon McCune, Esquire, Blank Rome LLP, Wilmington, Delaware, Attorneys for Defendants Chiquita Brands International, Inc., Chiquita Brands, LLC, and Chiquita Fresh North America, LLC.

Donald E. Reid, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, Michael L. Brem, Esquire, Shirrmeister, Diaz-Arrastia, Brem, LLP, Houston, Texas, Attorneys for Defendant Dow Chemical Company.

Timothy Jay Houseal, Esquire, Jennifer M. Kinkus, Esquire, William E. Gamgort, Esquire, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware, Attorneys for Occidental Chemical Corporation.

John C. Phillips, Esquire, Phillips, Goldman, McLaughlin & Hall, P.A., Wilmington, Delaware, Attorney for Defendant AMVAC Chemical Corporation.

Kelly E. Farnan, Esquire, Katharine L. Mowery, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, Craig Stanfield, King & Spalding, LLP, Houston, Texas, Attorneys for Defendant Shell Oil Company.

James Semple, Esquire, Cooch & Taylor, P.A., Wilmington, Delaware, Attorney for Defendant Del Monte Fresh Produce, N.A., Inc.

**Rocanelli, J.**

Six years ago today, this Court dismissed this case on grounds of *forum non conveniens* under Delaware's *McWane* Doctrine[1] ("November 2013 Dismissal Order").[2] The basis for dismissal of this action was that the claims made in this Court had already been filed in in the United States District Court for the Eastern District of Louisiana ("Louisiana District Court"). By the time this Court granted the motion to dismiss at issue here, the Louisiana District Court had already dismissed Plaintiffs' claims on statute of limitations grounds and the United States Court of Appeals for the Fifth Circuit had already affirmed the Louisiana District Court's dismissal on those grounds. The Delaware Supreme Court, sitting *en banc*, adopted this Court's reasoning and affirmed the November 2013 Dismissal Order on October 20, 2014.[3] Accordingly, this lawsuit was dismissed because Plaintiffs had first pursued their claims in another court even though the claims in that other court had already been dismissed.

---

[1] *See McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970) (setting forth the principle that Delaware courts should freely exercise discretion in staying a Delaware action "when there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same parties and the same issues"); *see also Lisa, S.A. v. Mayorga*, 993 A.2d 1042, 1047 (Del. 2010) ("[W]here the Delaware action is *not* the first filed, the policy that favors strong deference to a plaintiff's initial choice of forum requires the court freely to exercise its discretion in favor of staying or dismissing the Delaware action (the '*McWane* doctrine').").

[2] *See Chaverri v. Dole Food Co.*, 2013 WL 5977413 (Del. Super. Ct. Nov. 8, 2013), *aff'd*, 2014 WL 7367000 (Del. Oct. 20, 2014).

[3] *See Chaverri v. Dole Food Co.*, 2014 WL 7367000 (Del. Oct. 20, 2014) (en banc).

Now Plaintiffs have moved to vacate the November 2013 Dismissal Order pursuant to Superior Court Rule of Civil Procedure 60(b)(6) on the basis that "[t]hree groundbreaking rulings" issued since the November 2013 Dismissal Order have so radically disrupted the legal foundations of this Court's November 2013 Dismissal Order that the dismissal can no longer stand. Defendants oppose Plaintiffs' Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Plainitffs' claims arise from alleged exposure to the pesticide 1, 2, dibromo 3, chloropropane ("DBCP") by persons employed on various banana farms throughout Central America, including Costa Rica, Ecuador, and Panama.

### I. Litigation in Texas and Various "Home" Countries

In 1993, Plaintiffs' Texas counsel filed a class action lawsuit in Texas state court ("Texas State Action") on behalf of all persons allegedly exposed to DBCP between 1965 and 1990 as a result of actions taken by Defendants.[4] In 1994, Defendants removed the Texas State Action to the United States District Court for the Southern District of Texas ("Texas District Court"), where the case was consolidated with other DBCP cases ("Texas Federal Action").[5]

In 1995, the Texas District Court dismissed the Texas Federal Action for *forum non conveniens*, finding the courts of Plaintiffs' home countries better suited

---

[4] *See Delgado v. Shell Oil Co.*, 890 F. Supp. 1324, 1337 (S.D. Tex. 1995).
[5] *See id.* at 1338.

to resolve Plaintiffs' claims ("Dismissal Order").[6] However, the Dismissal Order permitted Plaintiffs to return to the Texas District Court to resume the Texas Federal Action "in the event that the highest court of any foreign country finally affirms the dismissal for lack of jurisdiction of any action commenced by a plaintiff in these actions."[7]

After the foreign courts declined jurisdiction, in 2004, the Texas Federal Action was reinstated and the claims remanded to the Texas state court[8] where the parties litigated Plaintiffs' claims until 2010 when the Texas state court denied Plaintiffs' motion for class certification.[9]

## II.    Plaintiffs Pursue Claims in Louisiana

The class certification denial did not conclude the litigation. Instead, members of the putative class struck out on their own to seek relief through individual actions. Between May 31, 2011 and June 2, 2011, members of the putative class began filing actions in the Louisiana District Court, resulting in seven actions with 291 plaintiffs, all of which the Louisiana District Court consolidated

---

[6] *See id.* at 1372–73.
[7] *Id.* at 1375.
[8] *See Rodriguez Delgado v. Shell Oil Co.*, 322 F. Supp. 2d 798, 801–02, 816–17 (S.D. Tex. 2004).
[9] *Carcamo v. Shell Oil Co.*, No. 93-C-2290 (Tex. Dist. Ct. Brazoria Cty. June 3, 2010).

into a single action proceeding under a caption resembling the caption in this case: *Chaverri v. Dole Food Co.* ("Louisiana Action").[10]

Over the next year, Plaintiffs' counsel made a number of strategic decisions which involved distributing the risk to the putative class by dividing up the plaintiffs from the Texas litigation into a series of lawsuits filed in the federal and state courts of Delaware. First, a single plaintiff filed an action in the Delaware Superior Court on July 21, 2011 ("*Blanco*").[11] On May 31, 2012, this Court issued a letter notifying counsel that *Blanco* may proceed because, in part, Delaware law recognized the concept of cross-jurisdictional tolling.[12] Over the course of the next twenty-four hours, and while the Louisiana Action was still pending, Plaintiffs' counsel filed three additional actions in Delaware: two in federal court ("*Marquinez*" and "*Chavez*") and the instant action. The plaintiffs in all three actions were also plaintiffs in the Louisiana Action, and all three actions involved the same defendants and nearly identical claims as those involved in the Louisiana Action.

On August 2, 2012, Defendants filed a motion to dismiss the instant action. Defendants argued that this case should be dismissed based on *forum non conveniens* because the Complaint in this action mirrored the complaint in the first-filed

---

[10] 896 F. Supp. 2d 556 (E.D. La. 2012).

[11] *See Blanco v. AMVAC Chem. Corp.*, 2012 WL 3194412, at *5 (Del. Super. Ct. Aug. 8, 2012).

[12] Pls.' Mot. Vacate J. Rule 60(b)(6), Ex. A.

Louisiana Action. Plaintiffs opposed the Motion to Dismiss on the basis that the Louisiana Action might be time-barred. Plaintiffs' concerns materialized on September 17, 2012, when the Louisiana District Court dismissed the Louisiana Action with prejudice under the Louisiana prescription statute.[13]

One day after the Louisiana Action's dismissal, this Court granted Defendants' application for interlocutory appeal in the *Blanco* matter.[14] The Court in the instant action stayed Defendants' Motion to Dismiss pending the Delaware Supreme Court's decision in *Blanco*. This Court lifted the stay in the instant action after the Delaware Supreme Court issued its opinion in *Blanco* (the "*Blanco* Decision"),[15] and a hearing was scheduled on Defendants' Motion to Dismiss. Before the hearing took place, the Fifth Circuit affirmed the Louisiana District Court's dismissal of Plaintiffs' claims in the Louisiana Action on statute of limitations grounds.[16]

---

[13] *See Chaverri v. Dole Food Co.*, 896 F. Supp. 2d 556, 571–72, 574 (E.D. La. 2012).
[14] *See Blanco v. AMVAC Chem. Corp.*, 2012 WL 6215301 (Del. Super. Ct. Sept. 18, 2012). In granting the application, this Court certified the following question: "Does Delaware recognize the concept of cross-jurisdictional tolling?" *Id.*
[15] In the *Blanco* Decision, the Delaware Supreme Court held that Delaware law recognizes the concept of cross-jurisdictional tolling. *See Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 393 (Del. 2013). This Court later found the Delaware Supreme Court's answer and opinion in *Blanco* not to be applicable to this Court's analysis and disposition of Defendant's Motion to Dismiss because the Delaware Supreme Court explicitly limited its ruling in *Blanco* to Delaware's recognition of cross-jurisdictional tolling, which the parties did not raise in this action. *See Chaverri v. Dole Food Co.*, 2013 WL 5977413, at *2 (Del. Super. Ct. Nov. 8, 2013).
[16] *See Chaverri v. Dole Food Co.*, 546 F. App'x 409, 413–15 (5th Cir. 2013).

On November 8, 2013, this Court issued its November 2013 Dismissal Order,[17] finding that the *McWane* Doctrine permits Delaware courts to freely exercise discretion in favor of staying or dismissing a second-filed Delaware action when "(1) there is a prior action pending elsewhere (2) in a court capable of doing prompt and complete justice, and (3) involving the same parties and the same issues."[18] The animating principle behind this preference, this Court explained, is the policy that favors strong deference to a plaintiff's initial choice of forum.[19] "This policy is meant to discourage forum shopping and promote the orderly administration of justice 'by recognizing the value of confining litigation to one jurisdiction, whenever that is both possible and practical.'"[20] Finding the instant action met the three prongs of the *McWane* Doctrine, this Court granted Defendants' Motion to Dismiss.[21] On October 20, 2014, the Delaware Supreme Court, sitting *en banc*, adopted this Court's reasoning and affirmed the November 2013 Dismissal Order.[22] In the meantime, the sole plaintiff in *Blanco* voluntarily dismissed his

---

[17] *Chaverri v. Dole Food Co., Inc.*, 2013 WL 5977413, at \*3 (Del. Super. Ct. Nov. 8, 2013).

[18] *Chaverri v. Dole Food Co., Inc.*, 2013 WL 5977413, at \*1 (Del. Super. Ct. Nov. 8, 2013) (citing *McWane*, 263 A.2d at 283).

[19] *Id.* at \*2 (citing *Lisa*, 993 A.2d at 1047).

[20] *Id.* (quoting *Lisa*, 993 A.2d at 1047).

[21] *Id.* at \*2–3.

[22] *Chaverri v. Dole Food Co.*, 2014 WL 7367000 (Del. Oct. 20, 2014). Plaintiffs did not appeal this Court's November 2013 Dismissal Order as to all Defendants, but only as to Dole Food Company, Inc., Dole Fresh Fruit Company, Standard Fruit Company, and Standard Fruit and Steamship Company.

claims against Defendants on October 7, 2014, after Defendants moved for summary judgment on grounds including the statute of limitations and the plaintiff's "inability to demonstrate any exposure [to DBCP] or causation."[23]

## III.  Developments in the Federal Litigation

While the Delaware state-court litigation ended in 2014 in the *Blanco* and *Chaverri* cases, the parties to the two actions filed in the United State District Court for the District of Delaware ("Delaware District Court") continue to litigate their claims to this day.  Plaintiffs now argue that "three pivotal and precedential decisions" issued in those federal cases warrant reopening this matter.[24]

### A.  The Third Circuit's Decision in *Chavez v. Dole*

The first decision Plaintiffs cite was issued by the United States Court of Appeals for the Third Circuit in the *Chavez* case more than two years before Plaintiffs filed the instant Motion to Vacate.  In *Chavez*, the Delaware District Court had dismissed the plaintiffs' claims under the federal first-filed rule.[25]  The District Court observed that the federal first-filed rule provides that "when two federal district courts have the same case, the court which has the first case is the one that should decide the case."[26]  In light of this observation, the District Court concluded

---

[23] *See Blanco v. AMVAC Chem. Corp.*, No. N11C-07-149, at *2 (Del. Super. Ct. Oct. 9, 2014).

[24] Pls.'s Mem. Supp. Mot. Vacate Under Rule 60(b)(6), at 3.

[25] *See Chavez v. Dole Food Co.*, 2012 WL 3600307, at *1–2 (D. Del. Aug. 21, 2012).

[26] *Id.* at *1.

that because the plaintiffs had filed the Louisiana Action first, the Delaware District Court case should be dismissed with prejudice.[27]

While a Third Circuit panel initially affirmed the District Court's decision, the *en banc* Third Circuit vacated the District Court's order on September 2, 2016.[28] The Third Circuit concluded that federal courts exercising discretion under the federal first-filed rule, "in the vast majority of cases, . . . should stay or transfer a second-filed suit."[29] The Third Circuit therefore held that, based on the facts of the *Chavez* case and the federal law governing the federal first-filed rule, the District Court abused its discretion by dismissing the case with prejudice.[30]

### B. The Two Decisions in *Marquinez v. Dole Food Co.*

The next two decisions Plaintiffs cite in support of their Motion to Vacate arose in the federal *Marquinez* case in which the Delaware District Court issued two separate orders. In the first order, the District Court dismissed fourteen plaintiffs' claims under the federal first-filed rule based on their identical claims in the Louisiana Action ("First-Filed Decision").[31] In the second order, the District Court granted summary judgment in favor of the defendants, finding Delaware's statute of

---

[27] *See id.* at \*2.
[28] *See Chavez v. Dole Food Co.*, 836 F.3d 205 (3d Cir. 2016).
[29] *Id.* at 220.
[30] *Id.* at 221–22.
[31] *See Marquinez v. Dole Food Co.*, 2013 WL 12309514, at \*1 (D. Del. Sept. 19, 2013).

limitations barred the remaining plaintiffs' claims ("Tolling Decision").[32] Specifically, the District Court found that the statute of limitations stopped tolling in 1995 when the Texas District Court dismissed the Texas Federal Action on the grounds of *forum non conveniens*.[33]

The *Marquinez* plaintiffs appealed both orders, and the Third Circuit certified to the Delaware Supreme Court the question of whether class action tolling ended when the Texas District Court dismissed the Texas Federal Action based on *forum non conveniens*.[34] Plaintiffs cite the Delaware Supreme Court's answer and accompanying opinion as the second groundbreaking legal development supporting the Motion to Vacate.

### 1.    The Delaware Supreme Court's Tolling Decision

On March 15, 2018, the Delaware Supreme Court issued its answer to the Third Circuit's certified question, finding Delaware's statute of limitations continued to toll after the Texas District Court dismissed the Texas Federal Action in 1995.[35] In reaching this conclusion, the Court adopted the rule that "cross-jurisdictional class action tolling ends only when a sister trial court has clearly, unambiguously, and finally denied class action status."[36] The Court observed that

---

[32] *See Marquinez v. Dole Food Co.*, 45 F. Supp. 3d 420, 426 (D. Del. 2014).
[33] *See id.* at 423.
[34] *See Marquinez v. Dow Chem. Co.*, 183 A.3d 704, 705 (Del. 2018).
[35] *Id.* at 705–06.
[36] *Id.* at 711.

this approach "is consistent with [the *Blanco* Decision's] rationale of avoiding 'wasteful and duplicative litigation.'"[37]

### 2. The Third Circuit Adopts the Delaware Supreme Court's Opinion

The Third Circuit issued the Plaintiffs' final so-called groundbreaking decision on May 29, 2018—seven months before Plaintiffs filed the Motion to Vacate.[38] First, the court adopted the Delaware Supreme Court's answer to the Third Circuit's certified question and vacated the Delaware District Court's Tolling Decision.[39] Next, the court vacated the Delaware District Court's First-Filed Decision, citing its decision in *Chavez* and noting that the circumstances in *Chavez* were "materially identical" to those in the lower court's First-Filed Decision.[40]

### LEGAL STANDARD

Superior Court Rule of Civil Procedure 60(b) controls motions to vacate and provides, in relevant part: "On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . any other reason justifying relief from the operation of the judgment."[41]

---

[37] *Id.* (quoting *Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 395 (Del. 2013)).
[38] *See Marquinez v. Dole Food Co.*, 724 F. App'x 131 (3d Cir. 2018).
[39] *See id.* at 132.
[40] *See id.*
[41] Super. Ct. Civ. R. 60(b)(6).

11

A motion to vacate a judgment or order "pursuant to . . . Superior Court Civil Rule 60(b) is addressed to the sound discretion of the Court."[42] "Delaware courts receive such motions with favor because they promote Delaware's strong judicial policy of deciding cases on the merits and giving parties to litigation their day in court."[43] As such, all doubts should be resolved in favor of the movant.[44]

Rule 60(b) implicates two important values: (1) "ensuring the integrity of the judicial process" and (2) "the finality of judgments."[45] "Because of the significant interest in preserving the finality of judgments, Rule 60(b) motions are not to be taken lightly or easily granted."[46]

## DISCUSSION

The "significant interest in preserving the finality of judgments" is an important consideration for this Court,[47] and several issues arising from Plaintiffs' Motion to Vacate would undermine that policy if the Court granted their Motion. As a preliminary matter, the timeliness of Plaintiffs' filing precludes the Court from reaching the merits of their Motion. The Court need not reach the merits of a Rule

---

[42] *Verizon Del., Inc. v. Baldwin Line Const. Co.*, 2004 WL 838610, at *1 (Del. Super. Ct. Apr. 13, 2004).
[43] *Id.* at *1.
[44] *Id.*
[45] *Wilson v. Montague*, 2011 WL 1661561, at *2 (Del. May 3, 2011) (citations omitted).
[46] *Id.*
[47] *See MCA, Inc. v. Matsushita Elec. Indus. Co.*, 785 A.2d 625, 635 (Del. 2001).

60(b) motion if the Court determines that the motion was untimely.[48]  Moreover, even if the Court did not find Plaintiffs' Motion untimely, Plaintiffs' Motion fails on the merits because it presents no extraordinary circumstances.  Thus, in the interest of upholding the integrity of the judicial process, the Motion to Vacate shall be denied for the reasons set forth in the following discussion.

## I.    The Motion to Vacate Is Untimely

As a preliminary matter, the Court must consider whether Plaintiffs filed their Motion to Vacate in a timely manner.  While Rule 60(b) does not require a movant to file a motion to vacate within a particular time period, Delaware courts have held that unreasonable delay in bringing such a motion will preclude the Court from granting relief.[49]  The party seeking relief under Rule 60(b) is "obliged to act without unreasonable delay."[50]  In determining whether there is unreasonable delay, the Court must look at all circumstances surrounding the delay.[51]

Delaware case law varies on what constitutes an unreasonable delay.  In *Schremp v. Marvel*, the Delaware Supreme Court affirmed the Superior Court's denial of the plaintiff's Rule 60(b) motion because it was untimely when the plaintiff waited two months after the plaintiff had knowledge of the basis to file a motion to

---

[48] *Schremp v. Marvel*, 405 A.2d 119, 120 (Del. 1979).
[49] *Id.*
[50] *Id.*
[51] *Id.* at 120–21.

13

vacate.[52] In reaching that decision, the Court in *Schremp* took into account the "inflexible time" that the Delaware Rules of Civil Procedure provide parties in pursuing other forms of relief.[53] In *Opher v. Opher*, the Delaware Family Court ruled that a Rule 60(b) motion was untimely when the petitioner waited eleven months to file the motion.[54] The Family Court stated, "To allow relief in such egregious circumstances would encourage parties to disregard the procedures and time limits imposed elsewhere in the Court Rules."[55] In *Christina Board of Education v. 322 Chapel Street*, the Superior Court noted the purpose behind Rule 60(b): even though Rule 60(b) provides "relief to a party who for one of the articulated reasons has missed the time for a direct appeal, it is not available to a party who has shown an unexplained disregard of the court rules as well as his own interest."[56]

---

[52] *Id.* at 120 (finding a delay of two months unreasonable); *see also Opher v. Opher*, 531 A.2d 1228, 1234 (Del. Fam. Ct. 1987) (finding a delay of eleven months unreasonable); *Ramirez v. Rackley*, 70 A.2d 18 (Del. Super. Ct. 1949) (finding a delay of sixteen months unreasonable).

[53] *See Schremp*, 405 A.2d at 121 ("Tested by the pace at which litigation often proceeds, [two months] may not seem like a long time. But, measured by the inflexible time one has for appealing an adverse judgment (thirty days), or moving for a new trial (ten days), or reargument in this Court (fifteen days), [the motion to vacate] was untimely." (citations omitted)).

[54] *Opher*, 531 A.2d at 1234.

[55] *Id.*

[56] *See Christina Bd. of Educ. v. 322 Chapel St.*, 1995 WL 163509, at *6 (Del. Super. Ct. Feb. 9, 1995).

14

In evaluating the reasonableness of a delay, the Court must measure the time that elapsed between when the movant could have filed the motion and when the movant actually filed the motion.[57] The Court thus measures the reasonableness of Plaintiffs' delay from the time that Plaintiffs' "groundbreaking" decisions issued to the time at which Plaintiffs filed the Motion to Vacate. In addition, the Court considers all circumstances surrounding Plaintiffs' delay to determine if the delay is unreasonable.

Plaintiffs urge this Court to use the final decision in the so-called groundbreaking trilogy as the benchmark for determining the timeliness of the Motion to Vacate.[58] As discussed below, the Court rejects that decision's relevance to the November 2013 Dismissal Order. However, assuming *arguendo* that the decision provides a basis for relief, the seven-month delay is not reasonable under the circumstances.

In their Motion to Vacate, Plaintiffs provide two explanations for the seven-month delay: (1) Plaintiffs' counsel is overburdened by the other ongoing DBCP cases; and (2) preparing the Motion required significant time and research in light of

---

[57] *Bouret-Echevarria v. Caribbean Aviation Maint. Corp.*, 784 F.3d 37, 43–44 (1st Cir. 2015) (citing *Klapprott v. United States*, 335 U.S. 601, 607–16 (1949)).

[58] The other two decisions issued two years and ten months, respectively, prior to the date that Plaintiffs filed the instant Motion. The reasons why Plaintiffs' Motion is untimely based on the date of the final decision are only exacerbated by evaluating the Motion's timeliness based on the dates of those decisions.

the complex history of this case.[59]  The unreasonableness of Plaintiffs' delay is further underscored by Plaintiffs' own explanations.  First, Plaintiffs' Texas counsel in the instant action also represented the plaintiffs in each case Plaintiffs cite as grounds to vacate this Court's November 2013 Dismissal Order.  Plaintiffs' Texas counsel was therefore immediately aware of each "groundbreaking" legal development giving rise to the instant Motion but nevertheless delayed filing by two years from the first decision cited to seven months until the final decision cited.  And while the Court is mindful of the complexity of the overall DBCP litigation, the purported "Gordian Knot" in which Plaintiffs find themselves is the result of Plaintiffs' own strategy of filing duplicative actions across the country.  The Court cannot overlook the delay simply because it took Plaintiffs time to untie and package that history for presentation to the Court.  It was an unreasonable delay.

## II.     The Motion to Vacate Does Not Set Forth Extraordinary Circumstances

Even if Plaintiffs' Motion was timely filed, the Motion to Vacate would fail on the merits because it does not present extraordinary circumstances.  The words "any other reason justifying relief" of Rule 60(b)(6) vests power in the Court to vacate judgments whenever such action is appropriate to accomplish justice.[60] Subsection (b)(6) is an independent ground for relief, with a different standard to be

---

[59] Pls.' Mot. Vacate J. Rule 60(b)(6) ⁋ 9; Pls.' Mem. Supp. Mot. Vacate Rule 60(b)(6), at 29–30.
[60] *Jewell v. Div. of Soc. Servs.*, 401 A.2d 88, 90 (Del. 1979).

16

applied than under the other paragraphs of Rule 60.[61] The movant must demonstrate "extraordinary circumstances."[62] Similar to the other subsections of Rule 60(b), "the interest of justice provision is addressed to the Court's sound discretion."[63] This Court has stated that "[d]espite the broad power inherent in the provision, the Court must, of course, identify a *valid* reason to grant relief from a judgment, and must recognize that such reasons exist only in 'extraordinary situation[s] or circumstances.'"[64] Whether extraordinary circumstances exist is a case-by-case determination under the facts of the particular case.[65]

"[I]ntervening changes in the law *rarely* justify relief from final judgments under 60(b)(6)."[66] In other words, a mere change in the law will rarely constitute the "extraordinary circumstances" necessary to upend a court's otherwise final judgment. Plaintiffs' Motion points to several cases in which such a rarity existed. Each of those cases, however, involved changes in *controlling* law that contradicted the outcomes of those courts' prior final judgments.[67] None of the "groundbreaking" decisions Plaintiffs cite in their Motion constitute such a change.

---

[61] *Id.*

[62] *Id.*

[63] *Wife B v. Husband B*, 395 A.2d 358 (Del. 1978).

[64] *Rembrandt Techs., L.P. v. Harris Corp.*, 2009 WL 2490873, at *2 (Del. Super. Ct. Aug. 14, 2009) (citing *Jewell*, 401 A.2d at 90).

[65] *Christina Bd. of Educ.*, 1995 WL 163509, at *7 (emphasis added).

[66] *Cox v. Horn*, 757 F.3d 113, 121 (3d Cir. 2014).

[67] *See Gondeck v. Pan Am. World Airways, Inc.*, 382 U.S. 25 (1965) (vacating an order denying certiorari and reversing the circuit court's judgment that affirmed the

17

## A. The Tolling Decisions Do Not Affect the Outcome of the November 2013 Dismissal Order

The Court rejects Plaintiffs' arguments as to the relevancy of the tolling decisions in *Marquinez*. The Court's November 2013 Dismissal Order dismissed Plaintiffs' claims under Delaware's *McWane* Doctrine. It did not address Delaware's tolling laws.[68] On the other hand, the Delaware Supreme Court limited its opinion in *Marquinez* to the narrow issue of when cross-jurisdictional tolling ends.[69] That issue never arose in this matter, and its development under Delaware

---

denial of a death-benefits award after learning that another circuit court had upheld an award to a different claimant under the same federal law); *In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353 (2d Cir. 2013) (finding Rule 60(b) relief appropriate where an earlier Second Circuit decision had prohibited some plaintiffs' claims to proceed and a subsequent Second Circuit decision permitted other plaintiffs' claims to proceed, despite applying the same statutory law to the same incident of harm); *Smith v. Smith*, 458 A.2d 711 (Del. Fam. Ct. 1983) (finding Rule 60(b) relief appropriate to reopen proceedings and permit the respondent to produce additional evidence where a recently enacted statute effectively overruled decisional law governing the Delaware Family Court's prior decision not to treat the respondent's husband's military asset as a marital asset).

[68] Plaintiffs' argument that the *Marquinez* decisions somehow affect this Court's November 2013 Dismissal Order is similar to an argument Plaintiffs made in support of their opposition to Defendants' 2013 Motion to Dismiss:

> Plaintiffs argue that the Delaware Supreme Court spoke on the issues of the instant case, and in favor of allowing this case to proceed, at the time that it answered the certified question in *Dow Chemical Corp. v. Blanco*. The court rejects this argument. The Delaware Supreme Court was very explicit in its ruling that the only question it was addressing was whether Delaware recognizes cross jurisdictional tolling.

*Chaverri v. Dole Food Co.*, 2013 WL 5977413, at *2 (Del. Super. Ct. Nov. 8, 2013) (footnotes omitted).

[69] *See Marquinez*, 183 A.3d at 705–06. In response to the Third Circuit's certified question, the Delaware Supreme Court provided the following answer:

18

law therefore has no impact on this Court's November 2013 decision. The *Marquinez* tolling decisions therefore do not present extraordinary circumstances warranting relief from judgment.

**B.      Developments in the Federal First-Filed Rule Do Not Affect Delaware's *McWane* Doctrine**

The cases involving the federal first-filed rule are also inapposite. Those decisions—*Chavez* and the Third Circuit's order reinstating fourteen plaintiffs' claims in *Marquinez*—are simply not controlling law. While the federal first-filed rule and Delaware's first-filed rule, as set forth under the *McWane* Doctrine, sound similar in name, they are not the same in application.

First, the underlying rationales of each doctrine are distinct. The federal first-filed rule is a federal abstention doctrine based on "principles of comity and equity."[70] Those principles give way, however, when a "district court's duty to decide cases within its jurisdiction" becomes unavoidable due to the parties' inability to present their claims to another court.[71] Delaware's *McWane* Doctrine,

---

No, the federal district court dismissal in 1995 on grounds of *forum non conveniens* and consequent denial as moot of "all pending motions," including the motion for class certification, did not end class action tolling. Class action tolling ended when class action certification was denied in Texas state court on June 3, 2010.

*Id.*

[70] *See Equal Emp't Opportunity Comm'n v. Univ. of Pa.*, 850 F.2d 969, 978 (3d Cir. 1988).

[71] *Chavez v. Dole Food Co.*, 836 F.3d 205, 220 (3d Cir. 2016).

19

by contrast, is an extension of Delaware's *forum non conveniens* law that is intended to promote "the orderly and efficient administration of justice" by permitting Delaware courts to either stay or dismiss a second-filed action out of deference to the forum in which the parties first filed.[72] The doctrine seeks to avoid "the wasteful duplication of time, effort, and expense that occurs when judges, lawyers, parties, and witnesses are simultaneously engaged in the adjudication of the same cause of action in two courts."[73]

Second, and as a result of the above distinctions, the two doctrines differ in how they permit courts to treat second-filed actions. Under the federal rule, courts exercising discretion under the rule, "in the vast majority of case," should either stay or transfer the second-filed suit.[74] That requirement preserves the district court's ability to hear the parties' case in the event that the first-filed case is dismissed and the second-filed action "is not truly duplicative of the first."[75] Such a requirement is consistent with the "district court's duty to decide cases within its jurisdiction."[76] No such duty exists under the *McWane* Doctrine where, as here, the plaintiffs chose to first file their claims in another jurisdiction. Instead, the *McWane* Doctrine permits dismissal of a plaintiff's second-filed action to avoid inconsistent and

---

[72] *McWane*, 263 A.2d at 282–83.
[73] *Id.* at 283.
[74] *See Chavez*, 836 F.3d at 220.
[75] *See id.*
[76] *See id.*

20

conflicting rulings.[77]   Such a rule upholds the doctrine's underlying policy of avoiding wasteful duplication of efforts.[78]

Based on these fundamental distinctions between the federal first-filed rule and Delaware's *McWane* Doctrine, the first-filed rule decisions Plaintiffs cite do not present extraordinary circumstances.  No change in the law governing the *McWane* Doctrine has occurred since the Court issued the November 2013 Dismissal Order. Federal decisions issued by a federal court applying federal law do not supplant well-established Delaware law.

## C.   Denying Plaintiffs' Motion to Vacate Would Not Produce Inconsistent Results

In an effort to appeal to the reasoning of this Court's November 2013 decision, Plaintiffs argue that permitting the November 2013 Dismissal Order to stand would produce inconsistent results, which is precisely what this Court sought to avoid by dismissing Plaintiffs' claims.  This argument misses the point.  The purported inconsistencies for which Plaintiffs sound alarms stem from the outcome of this case and the outcome of the ongoing federal litigation.  Plaintiffs argue that the federal-court plaintiffs have been permitted to proceed on their claims, while Plaintiffs here have not, and hence an inconsistency exists.  This is not the type of inconsistency with which this Court was concerned six years ago.  The Court's November 2013

---

[77] *See Lisa*, 993 A.2d at 1048.
[78] *See id.*

Dismissal Order was concerned with the inconsistency that would exist if the Court permitted Plaintiffs' claims to proceed in Delaware after the Louisiana District Court dismissed their identical claims in Plaintiffs' preferred forum. Contrary to Plaintiffs' concerns, the Court's refusal to reopen Plaintiffs' case does not create inconsistencies; rather, it prevents them.

## CONCLUSION

In consideration of the three decisions issued in federal cases involving different plaintiffs allegedly affected by DBCP, the Court finds that Plaintiffs unreasonably delayed filing their Motion to Vacate and failed to set forth any extraordinary circumstances warranting relief under Rule 60(b)(6). Plaintiffs waited up to two years and, at minimum, seven months to file their Motion, even though Plaintiffs' Texas counsel also represented the plaintiffs in each of the federal cases Plaintiffs cite. In addition, even if seven months did not constitute an unreasonable delay, the purported extraordinary circumstances to which Plaintiffs point are decisions issued in federal cases, involving irrelevant and non-controlling law. Therefore, Plaintiffs' Motion to Vacate is hereby denied.

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*
_____
**The Honorable Andrea L. Rocanelli**

22